ROBERT H. ROTSTEIN (SBN 72452), rxr@msk.com
EMILY F. EVITT (SBN 261491), efe@msk.com
JAMES D. BERKLEY (SBN 347919), jdb@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant
Netflix, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WHYTE MONKEE PRODUCTIONS, LLC, and TIMOTHY SEPI, <br><br> Plaintiffs, <br><br> v. <br><br> NETFLIX, INC. <br><br> Defendant. | CASE NO. 5:23-CV-03438-PCP <br><br> Honorable P. Casey Pitts <br><br> ***Removed from Superior Court for Santa Clara County Case No. 23CV413161*** <br><br> **OPPOSITION OF DEFENDANT NETFLIX, INC. TO PLAINTIFFS' MOTION TO REMAND TO STATE COURT** <br><br> [Declarations of Emily F. Evitt, James D. Berkley, and Liz Mason filed concurrently herewith] <br><br> Date: Thursday, Dec. 14, 2023 <br> Time: 10:00am <br> Courtroom: 8 (4th Floor) <br> Judge: Hon. P. Casey Pitts <br><br> Action Filed: March 17, 2023 <br> Date of Removal: July 11, 2023 |

Mitchell
Silberberg &
Knupp LLP

15969358.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF THE ISSUES ................................................................................... 2

STATEMENT OF RELEVANT FACTS ....................................................................... 2

ARGUMENT ................................................................................................................. 4

I.  LEGAL STANDARDS GOVERNING REMOVAL ........................................... 4

II.  THIS COURT HAS FEDERAL-QUESTION JURISDICTION ......................... 5

    A.  The Complaint Pleads Claims Arising Under U.S. Law. .......................... 6

    B.  The Copyright Act Completely Preempts the Allegations of Wrongdoing. ........... 8

    C.  Plaintiffs' Claims Require Interpretation of the U.S. Copyright Act. ................. 10

    D.  Plaintiffs' Claims Raise Substantial Issues Relating to Federal Regulation of International Copyright Matters. ......................... 12

III.  THIS COURT ALSO HAS DIVERSITY JURISDICTION ...................... 14

    A.  The Amount-in-Controversy Requirement Is Satisfied by a Preponderance of the Evidence. ......................... 15

    B.  Netflix May Rely on Evidence Submitted in Opposition. ....................... 16

        1.  Plaintiffs' 2022 Settlement Demand Alone Establishes That the Amount in Controversy Exceeds the Threshold. ......................... 17

        2.  The Complaint Seeks Remedies For Which the Amount At Stake Exceeds $75,000 ......................... 17

    C.  Plaintiffs Offer No Evidence as to Amount in Controversy. ....................... 22

IV.  NETFLIX'S REMOVAL WAS PROCEDURALLY PROPER ...................... 22

    A.  This District "Consistently" Permits Pre-Service (So-called "Snap") Removal by a Forum Defendant in a Diversity Action, ......................... 22

    B.  The "Unanimity Rule" Does Not Bar Removal by a Lone Defendant. ................ 24

    C.  The "Removal Timeframe" Poses No Bar to Removal. ......................... 25

CONCLUSION ............................................................................................................ 25

Mitchell
Silberberg &
Knupp LLP

15969358.1

OPPOSITION TO MOTION TO REMAND

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander v. JPMorgan Chase Bank*,
  2015 WL 12028676 (S.D. Cal. Sept. 11, 2015) .......................................................... 18

*Allarcom Pay Television Ltd.* v. *General Instr. Corp.*,
  69 F.3d 381 (9th Cir. 1995) ............................................................................................ 8

*Am. Bank of Com. v. Corondoni*,
  169 Cal.App.3d 368 (1985) .......................................................................................... 12

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
  573 U.S. 431 (2014) ................................................................................................... 7, 8

*Arias v. Residence Inn by Marriott*,
  936 F. 3d 920 (9th Cir. 2019) .......................................................................... 15, 16, 17

*Att. Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
  268 F.3d 103 (2d Cir. 2001) ........................................................................................ 14

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ....................................................................................................... 21

*Boggs v. Lewis*,
  863 F.2d 662 (9th Cir. 1988) ........................................................................................ 24

*Brady v. Mercedes-Benz USA, Inc.*,
  243 F. Supp. 2d 1004 (N.D. Cal. 2002) ....................................................................... 21

*Browne v. McDonnell Douglas Corp.*,
  504 F. Supp. 514 (N.D. Cal. 1980) .............................................................................. 12

*Burda v. M. Ecker Co.*,
  954 F.2d 434 (7th Cir. 1992) ........................................................................................ 12

*Carter v. Helmsley-Spear, Inc.*,
  71 F.3d 77 (2d Cir. 1995) ....................................................................................... 13, 14

*Castillo v. ABM Indus., Inc.*,
  2017 WL 5609791 (C.D. Cal. Nov. 20, 2017) ............................................................. 18

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ....................................................................................................... 5

*Chavez v. JPMorgan Chase & Co.*,
  888 F.3d 413 (9th Cir. 2018) ........................................................................................ 15

Mitchell
Silberberg &
Knupp LLP

15969358.1

ii                    CASE NO. 5:23-CV-03438-PCP

1

2

**TABLE OF AUTHORITIES**
(continued)

3

**Page(s)**

4

*Cin. Ins. Co. v. Omega Elec. & Sign Co.*
2023 U.S. Dist. LEXIS 11856 (E.D. Mich. Jan. 24, 2023) ....................................... 25

5

6

*City of Oakland v. BP PLC,*
969 F.3d 895 (9th Cir. 2020) ........................................................................... 10

7

8

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) ......................................................................................... 12

9

*Cohn v. Petsmart, Inc.*,
281 F.3d 837 (9th Cir. 2002) ..................................................................... 16, 17

10

11

*Collett v. Northland Art Company*,
Federal Court of Canada, 2018 FC 269 ............................................................ 19

12

13

*Corral v. Select Portfolio Servicing, Inc.*,
2015 WL 13687117 (N.D. Cal. June 4, 2015) .................................................. 15

14

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
2016 WL 7507757 (S.D.N.Y. Dec. 30, 2016) .................................................. 10

15

16

*Daniher v. Pixar Animation Studios*,
2022 WL 1470480 (N.D. Cal. May 10, 2022) .................................................... 4

17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) ............................................................... 14, 16, 20, 22

18

19

*Davidovici v. Koons*,
Paris Court of Appeal, No. 034/2021 (Feb. 23, 2021) ..................................... 19

20

21

*Erickson Prods. Inc. v. Kast*,
2017 WL 3670790 (N.D. Cal. Aug. 25, 2017) .................................................. 21

22

*Faircloth v. AR Res., Inc*.,
2020 WL 2747781 (N.D. Cal. May 27, 2020) ............................................. 20, 21

23

24

*Ferguson v. KIA Motors Am. Inc*.,
2021 WL 1997550 (E.D. Cal. May 19, 2021) ................................................... 16

25

26

*Fierro v. Cap. One, N.A*.,
2022 WL 17486364 (S.D. Cal. Dec. 6, 2022) ................................................... 20

27

28

*Flier v. FCA US LLC*,
2021 WL 10894075 (N.D. Cal. Oct. 4, 2021) ................................................... 16

Mitchell
Silberberg &
Knupp LLP

15969358.1

iii                    CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page(s)

4

*Fobb v. Uber Techs., Inc.*,
     2022 WL 620336 (N.D. Cal. Mar. 3, 2022) ............................................... 23

5

6

*Fritsch v. Swift Transportation Co. of Arizona, LLC*,
     899 F.3d 785 (9th Cir. 2018) ...................................................................... 20

7

8

*Galt G/S v. JSS Scandinavia*,
     142 F.3d 1150 (9th Cir. 1998) .................................................................... 20

9

*Garcia v. Google, Inc.*,
     786 F. 3d 733 (9th Cir. 2015) ..................................................................... 13

10

11

*GlobeRanger Corp. v. Software AG*,
     691 F.3d 702 (5th Cir. 2012) ........................................................................ 9

12

13

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
     545 U.S. 308 (2005) ............................................................................. 5, 10

14

*Gunn v. Minton*,
     568 U.S. 251 (2013) .................................................................................. 14

15

16

*Humana Inc. v. Handa Pharms., LLC*,
     2023 WL 5227191 (N.D. Cal. Aug. 15, 2023) ........................................... 23

17

18

*Hyatt Corp. v. Stanton*,
     945 F. Supp. 675 (S.D.N.Y. 1996) ............................................................ 13

19

*Ibarra v. Manheim Investments, Inc.*,
     775 F.3d 1193 (9th Cir. 2015) .................................................................... 16

20

21

*J.H. v. City of Philadelphia*,
     2017 WL 5668051 (E.D. Pa. Nov. 27, 2017) ............................................. 25

22

23

*James River Ins. Co. v. Liberty Surplus Ins. Corp.*,
     2018 WL 11346744 (C.D. Cal. Mar. 6, 2018) ........................................... 15

24

*Jimenez v. Ford Motor Co.*,
     2021 WL 5149865 (N.D. Cal. Nov. 5, 2021) ............................................. 17

25

26

*JustMed, Inc. v. Byce*,
     600 F.3d 1118 (9th Cir. 2010) ............................................................ 5, 10, 11

27

28

*Kary v. Combs*,
     2017 WL 6888715 (C.D. Cal. Aug. 28, 2017) ........................................... 17

Mitchell
Silberberg &
Knupp LLP

15969358.1

**OPPOSITION TO MOTION TO REMAND**

1

2

**TABLE OF AUTHORITIES**
<u>(continued)</u>

3

<u>Page(s)</u>

4

*Kashani v. Tsann Kuen China Enter. Co.*,
118 Cal. App. 4th 531 (2004).................................................................................12

5

*Lahiri v. Universal Music & Video Distribution, Inc.*,
513 F. Supp. 2d 1172 (C.D. Cal. 2007).................................................................10

6

7

*LaSala v. UBS, AG*,
510 F. Supp. 2d 213 (S.D.N.Y. 2007)......................................................................9

8

9

*Levy Prod. Grp., LLC v. R&R Partners, Inc.*,
-- F. Supp. 3d. --, 2023 WL 4549361 (D. Nev. Feb. 28, 2023)...............................9

10

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998)....................................................................................8

11

12

*Los Angeles News Serv. v. Reuters TV Intern.*,
340 F. 3d 926 (9th Cir. 2003)...................................................................................8

13

*Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*,
345 F. App'x 244 (9th Cir. 2009)...........................................................................21

14

15

*Monfort v. Adomani, Inc.*,
2019 WL 131842 (N.D. Cal. Jan. 8, 2019) ...........................................................23

16

17

*Narayan v. Compass Grp. USA, Inc.*,
284 F. Supp. 3d 1076 (E.D. Cal. 2018)..................................................................16

18

*Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Sols., Inc.*,
2004 WL 1888769 (N.D. Cal. July 21, 2004) ......................................................5, 6

19

20

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
211 F.3d 10 (2d Cir. 2000)........................................................................................7

21

22

*Olguin v. Inspiration Consol. Copper Co.*,
740 F.2d 1468 (9th Cir. 1984)..................................................................................6

23

24

*Pa. Dep't of Corr. v. Yeskey*,
524 U.S. 206 (1998).................................................................................................9

25

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998)....................................................................................6

26

27

*Patel v. Nike Retail Servs., Inc.*,
58 F. Supp. 3d 1032 (N.D. Cal. 2014) ...................................................................22

28

Mitchell
Silberberg &
Knupp LLP

15969358.1

**OPPOSITION TO MOTION TO REMAND**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Perez v Fernandez*,
  [2012] FMCA 2, Federal Circuit Court of Australia (Feb. 10, 2012) ......................................... 19

*Pretka v. Kolter City Plaza II, Inc.*,
  608 F.3d 744 (11th Cir. 2010) ....................................................................................................... 17

*Proctor v. Vishay Intertechnology Inc.*,
  584 F.3d 1208 (9th Cir. 2009) .................................................................................................. 5, 24

*Ramirez v. Benihana Nat'l Corp.*,
  2019 WL 131843 (N.D. Cal. Jan. 8, 2019) .................................................................................. 21

*Reich v. Purcell*,
  67 Cal. 2d 551 (1967) .................................................................................................................... 12

*Rickley v. Cnty. of Los Angeles*,
  2008 WL 11349767 (C.D. Cal. Sept. 23, 2008) ........................................................................... 25

*Rios v. New York & Co., Inc.*,
  2017 WL 3575220 (C.D. Cal. Aug. 17, 2017) ......................................................................... 19, 22

*Robertson v. U.S. Bank, N.A.*,
  831 F.3d 757 (6th Cir. 2016) ......................................................................................................... 25

*Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*,
  336 F.3d 982 (2003) ................................................................................................................... 5, 10

*Schwartz v. Paramount Pictures Corp.*,
  2021 WL 779063 (C.D. Cal. Feb. 26, 2021) ........................................................................... 5, 10

*Serving Seniors Care, Inc. v. Serratore-Rebong Grp. of Companies Corp.*,
  2023 WL 4596788 (N.D. Cal. July 17, 2023) ............................................................................... 15

*SteppeChange LLC v. VEON Ltd.*,
  354 F. Supp. 3d 1033 (N.D. Cal. 2018) .......................................................................................... 4

*Subafilms, Ltd. v. MGM-Pathe Communs. Co.*,
  24 F.3d 1088 (9th Cir. 1994) ...................................................................................................... 7, 13

*T.B. Harms Co. v. Eliscu*,
  339 F.2d 823 (2d Cir.1964) ............................................................................................................. 5

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  52 F.4th 1054 (9th Cir. 2022) ....................................................................................................... 13

Mitchell
Silberberg &
Knupp LLP

15969358.1

vi                    CASE NO. 5:23-CV-03438-PCP
**OPPOSITION TO MOTION TO REMAND**

# TABLE OF AUTHORITIES
<u>(continued)</u>

**Page(s)**

*Universal Inst. Corp. v. Micro Sys. Eng'r, Inc.*,
  924 F.3d 32 (2d Cir. 2019)..............................................................................8

*Unlockd Media, Inc. Liquidation Tr. v. Google LLC*,
  2023 WL 6226379 (N.D. Cal. Sept. 22, 2023)...........................................18

*WB Music Corp. v. Royce Int'l Broad. Corp.*,
  2018 WL 6177237 (C.D. Cal. July 9, 2018) ..............................................21

*Whyte Monkee Productions, LLC v. Netflix, Inc.*,
  601 F. Supp. 3d 1117 (W.D. Okla. 2022) .............................................1, 2, 3, 11

*Whyte Monkee Productions, LLC v. Netflix, Inc.*,
  2022 WL 4775905 (W.D. Okla. Sept. 30, 2022) .........................................3

*Whyte Monkee Productions, LLC v. Netflix, Inc.*,
  2022 WL 16936038 (W.D. Okla. Nov. 14, 2022).........................................3

*Xcel Data Sys., Inc. v. Best*,
  2009 WL 902412 (E.D. Cal. Mar. 31, 2009) .............................................10

*Yu v. ByteDance Inc.*,
  2023 WL 5671932 (N.D. Cal. Sept. 1, 2023)...............................................9

*Zeppeiro v. Green Tree Servicing, LLC*,
  2014 WL 12596312 (C.D. Cal. June 16, 2014)....................................15, 17

**STATUTES**

17 U.S.C.
  § 101 .......................................................................................................3
  § 106.................................................................................................8, 9, 12
  § 106A.....................................................................................................12
  § 107.....................................................................................................3, 12
  § 201(b).................................................................................................3, 11
  § 301(a) ....................................................................................................9

28 U.S.C.
  § 1331.......................................................................................................4
  § 1332(a) ...............................................................................................2, 4
  § 1367......................................................................................................14
  § 1441................................................................................................2, 4, 23
  § 1446.............................................................................................4, 24, 25

Mitchell
Silberberg &
Knupp LLP

15969358.1

**OPPOSITION TO MOTION TO REMAND**

1

**TABLE OF AUTHORITIES**
<u>(continued)</u>

2

3

<u>**Page(s)**</u>

4

Berne Convention Implementation Act of 1988 ............................................................. 13

5

Canadian Copyright Act
§ 34.1 ............................................................................................................. 18

6

§ 38.1(a) ........................................................................................................ 18
§ 34(3) ........................................................................................................... 20

7

8

French Code of Civil Procedure, Article 700 ............................................................... 20

9

German Code of Civil Procedure, Article 91 ............................................................... 20

10

Italian Code of Civil Procedure, Article 91 ................................................................. 20

11

Spanish Code of Civil Procedure, Articles 394-398 .................................................... 20

12

**RULES**

13

Fed. R. Civ. P. 44.1 ..................................................................................................... 18

14

Australian Federal Circuit Court Rules, Part 22 .......................................................... 20

15

Australian Federal Court Rules, Part 40...................................................................... 20

16

New Zealand High Court and District Court Rules, Parts 14 ....................................... 20

17

United Kingdom Civil Procedure Rules, Part 44 ......................................................... 20

18

**OTHER AUTHORITIES**

19

133 Cong. Rec. H1293 (Daily Ed. March 16, 1987) (statement of Rep. Kastenmeier)................... 14

20

Examining the Use of "Snap" Removals to Circumvent the Forum Defendant Rule:
Hearing Before the Subcomm. on Cts., Intell. Prop., and the Internet of the H.

21

Comm. on the Judiciary, 116th Cong. 11-12 (2019)................................................... 24

22

H.R. Rep. No. 112-10 (2011) ...................................................................................... 25

23

V. Lopez & E. Maccarrone, Leading the World in the Wrong Direction: Is It Time

24

for the United States to Adopt the World Standard Loser Pays Rule in Civil
Litigation, 32 NE. J. LEGAL Stud. 1 (2014) ............................................................ 20

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

15969358.1

viii                          CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

# INTRODUCTION

By this lawsuit, Plaintiffs Timothy Sepi (an admitted perjurer) and Whyte Monkee Productions LLC ("Whyte Monkee") seek to re-litigate a 2020 copyright infringement action that they lost in the U.S. District Court for the Western District of Oklahoma (the "Oklahoma Action"). There, Plaintiffs sued Defendant Netflix, Inc. ("Netflix") and a production company for allegedly infringing copyrights in eight videos created during and shortly after Plaintiff Sepi's employment at an Oklahoma animal park (the "Park") by including short excerpts from those videos in a 2020 documentary series, *Tiger King: Murder, Mayhem and Madness* (the "Documentary").

In the Oklahoma Action, Plaintiffs sought damages for "acts of streaming the Documentary … to viewers across the world." In early April 2022, Plaintiffs demanded millions of dollars to settle these meritless claims. That same month, the district court granted defendants' motion for summary judgment as to all claims. *Whyte Monkee Productions, LLC v. Netflix, Inc.*, 601 F. Supp. 3d 1117 (W.D. Okla. 2022). The district court held that (1) seven of the eight videos in question were works made for hire such that Plaintiffs did not own them; (2) Sepi gave sham testimony during his 2021 deposition about his employment and about the formation of co-plaintiff Whyte Monkee; and (3) any use of the eighth video was fair use.

Netflix and its co-defendant incurred more than $600,000 in attorneys' fees litigating the case through summary judgment. On a motion to recover a fraction of those fees, the district court found Plaintiffs' lawsuit to have been objectively unreasonable and improperly motivated, and awarded $35,000 to Netflix and its co-defendant.

Here, Plaintiffs rehash their prior, failed claims, arguing that Netflix's transmission of the selfsame video-excerpts to foreign audiences – ***through acts alleged to have occurred "substantially" within the United States*** – infringes Plaintiffs' moral and economic (*i.e.*, exploitation) rights under ***foreign*** copyright law. Because these claims arise out of U.S. copyright law, they are completely preempted by the U.S. Copyright Act. And even were they not, the Complaint raises substantial issues resolvable only by reference to U.S. copyright law, to U.S. treaties, and to questions of U.S. federal policy and foreign relations. This case belongs in federal court.

**OPPOSITION TO MOTION TO REMAND**

Mitchell
Silberberg &
Knupp LLP

15969358.1

This Court also has diversity jurisdiction. Plaintiffs acknowledge there is complete diversity of citizenship but claim, first, that the amount in controversy does not exceed $75,000, as required by 28 U.S.C. § 1332(a). This is belied by their settlement demand in the Oklahoma Action, their claims for "all available remedies and relief" under the laws of **eleven countries**, their non-monetary claims for relief, and their prayer for attorneys' fees. The amount in controversy exceeds $75,000 for a myriad of separate reasons.

Nor is there merit to Plaintiffs' contention that this case should be remanded because Netflix is a forum defendant. Under the express terms of 28 U.S.C. § 1441, the provisions precluding a forum defendant from removing apply only where that defendant was "properly joined and served"—permitting so-called "snap removal." So, removal was proper because Netflix was unserved at the time of removal. Plaintiffs cite not a single case within this District to support their contrary arguments. For the reason set forth below, Plaintiffs' motion to remand should be denied.

## STATEMENT OF THE ISSUES

1.  Where the complaint alleges acts of infringement occurring in the United States and implicating copyright ownership and international intellectual property relations, whether Netflix properly removed based on federal-question jurisdiction.

2.  In light of the admitted diversity of citizenship, whether Netflix properly removed because the amount in controversy exceeds $75,000 and Netflix was not properly joined and served at the time of removal.

## STATEMENT OF RELEVANT FACTS

The relevant background facts are set forth in the summary judgment order in the Oklahoma Action. *See* 601 F. Supp. 3d at 1123-28; Declaration of Emily F. Evitt ("Evitt Decl."), ¶ 7 & Ex. 5. To summarize, in March of 2015, Sepi began working with the colorful figure at the Park known as Joe Exotic ("Exotic"). Sepi was employed by the Oklahoma-based Park when he filmed seven of the eight audiovisual works ("the Videos") at issue here and in the Oklahoma Action. *See id.*; Evitt Decl., ¶¶ 3-4 & Ex. 2 at ¶¶ 8-9, Ex. 3 at p. 6. In March 2020, Netflix released the Documentary, which "tell[s] a bizarre but compelling true-crime story." Mot. (Dkt. 25) at 10. Plaintiffs filed the Oklahoma Action on September 14, 2020, alleging that the Documentary infringed copyrights in

Mitchell
Silberberg &
Knupp LLP

15969358.1

2                                    CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

1  the very Videos at issue here. Evitt Decl., ¶ 2 & Ex. 1; *see also id.,* Ex. 2 at ¶ 20. Ultimately,

2  Netflix and the producer of the Documentary, Royal Goode Productions, LLC ("Royal Goode"),

3  were named as defendants. *Id.,* ¶ 3 & Ex. 2. Royal Goode is not a defendant here.

4       In Oklahoma, Plaintiffs claimed that Sepi was only a still photographer on Park tours and so

5  filmed the Videos outside the scope of his employment. Plaintiffs also claimed that Sepi owned

6  Whyte Monkee, and that he and Whyte Monkee owned the copyrights in the Videos. In this way,

7  Plaintiffs tried to avoid copyright law's work-made-for hire doctrine, 17 U.S.C. §§ 101 and 201(b),

8  whereby an ***employer*** owns the copyright in works created within the scope of employment.

9       Shockingly, in an earlier deposition taken in another Park-related matter in 2016, Sepi had

10  testified that his employment duties at the Park included creating videos. *See* 601 F. Supp. 3d at

11  1126; Evitt Decl., Ex. 5 at pp. 8-9. Sepi had also testified that he had nothing to do with the

12  formation of Whyte Monkee. *Id.* Confronted at a 2021 deposition with these blatant

13  inconsistencies, Sepi blithely claimed to have "perjured" himself in 2016. *See* 601 F. Supp. 3d at

14  1126-27; Evitt Decl., Ex. 5 at pp. 9-11.

15       Netflix and Royal Goode moved for summary judgment on the grounds that, under the U.S.

16  Copyright Act, seven of the eight Videos were works made for hire—such that Sepi had no

17  copyright ownership—and that use of short excerpts from the eighth Video, filmed at a funeral on

18  Park premises in 2017, was fair use. 601 F. Supp. 3d at 1128; Evitt Decl., Ex. 5 at p. 12. In early

19  April 2022, while that motion was pending, Plaintiffs' counsel conveyed an oral settlement demand

20  of millions of dollars. *Id.*, ¶ 6. On April 27, 2022, the Court granted Defendants' motion in its

21  entirety, applying the sham affidavit doctrine to preclude Sepi from disclaiming his 2016 sworn

22  testimony and finding that the seven Videos were works for hire and that brief uses of the eighth

23  Video was fair use under section 107 of the U.S. Copyright Act. *Id.;* 601 F. Supp. 3d at 1128-39;

24  *see* Evitt Decl., Exs. 5-6. The district court awarded $35,000 in attorneys' fees and $6,139.85 in

25  costs to Defendants. *See* Evitt Decl., ¶¶ 8-9 & Exs. 7-8; 2022 WL 4775905 (W.D. Okla. Sept. 30,

26  2022); 2022 WL 16936038 (W.D. Okla. Nov. 14, 2022). Plaintiffs' appeals to the Tenth Circuit of

27  the summary judgment decision, the fees award, and costs award are pending. *See* Evitt Decl., ¶ 10.

28       Plaintiffs filed the present Complaint in Santa Clara County Superior Court on March 17,

Mitchell
Silberberg &
Knupp LLP

15969358.1

2023. *See* Dkt. 1-1 at Ex. A. On April 25 and June 9, 2023, the court granted Plaintiffs' *ex parte* requests seeking additional time to serve the Complaint. *Id.* at pp. 24-34. Between June 20 and 22, 2023, Plaintiffs arranged for mail delivery of packages to certain Netflix employees and to Netflix's corporate agent containing, *inter alia*, the Complaint and "notice and acknowledgment of receipt" forms. Decl. of Daniel Tully (Dkt. 25-1) at ¶¶ 1-5. Netflix neither executed nor returned these forms and was thus not served. *See id.*, ¶¶ 1-8. Netflix filed its Notice of Removal on July 11, 2023 (Dkt. 1; Mot. at 33) and gave notice thereof to Plaintiffs and the Clerk of the Santa Clara County Court on the same date. Dkt. 3. No service of the Complaint was effected on Netflix or its agent until at least July 13, 2023. Tully Decl. ¶¶ 7-8; *see* Mot. at 30, 32.

Plaintiffs admit that creation of the Documentary, including the alleged incorporation of edited excerpts from the Videos, occurred in the United States. Compl. ¶ 13. Plaintiffs also admit that the Videos themselves were first published in the United States. Evitt Decl., ¶ 5 & Ex. 4.

## ARGUMENT

## I.    LEGAL STANDARDS GOVERNING REMOVAL

A defendant may remove to federal court any civil action over which "the district courts of the United States have original jurisdiction." *See Daniher v. Pixar Animation Studios*, 2022 WL 1470480, at *3 (N.D. Cal. May 10, 2022); 28 U.S.C. § 1441(a). Original jurisdiction may be based either on federal-question jurisdiction, which is present when an action "aris[es] under the Constitution, laws, or treaties of the United States"; or diversity jurisdiction, which exists when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a). In both instances, a federal court assesses jurisdiction "primarily on the basis of the pleadings at the time of removal," but "may also consider affidavits or other 'summary judgment-type evidence' submitted after [a] motion to remand is filed." *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1040 (N.D. Cal. 2018) (citing, *inter alia*, *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) and *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). A defendant's notice of removal need only contain "a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a).

**OPPOSITION TO MOTION TO REMAND**

1  **II.    THIS COURT HAS FEDERAL-QUESTION JURISDICTION**

2      Plaintiffs contend that there is "simply no federal-question jurisdiction here" because the

3  foreign laws that the Complaint vaguely invokes are not "Act[s] of Congress," and because the

4  Complaint neither raises federal issues "so substantial as to require federal adjudication" nor any

5  serious policy issues relating to international copyright law. Mot. at 12-13. Plaintiffs are incorrect.

6      "Federal district courts have original jurisdiction over 'all civil actions arising under the

7  Constitution, laws, or treaties of the United States,'" *Caterpillar Inc. v. Williams*, 482 U.S. 386,

8  392 (1987) (quoting 28 U.S.C. § 1331), and have ***exclusive*** jurisdiction over "U.S. copyright

9  claims," which "may not be heard in state courts at all." Mot. at 13. As a general rule, "[a] case

10  'arises under' federal law within the meaning of § 1331 … if 'a well-pleaded complaint establishes

11  either that federal law creates the cause of action or that the plaintiff's right to relief necessarily

12  depends on resolution of a substantial question of federal law.'" *Proctor v. Vishay Intertechnology*

13  *Inc*., 584 F.3d 1208, 1219 (9th Cir. 2009) (quoting *Empire Healthchoice Assurance, Inc. v.*

14  *McVeigh,* 547 U.S. 677, 689-90 (2006)); *see also Grable & Sons Metal Prod., Inc. v. Darue Eng'g*

15  *& Mfg.,* 545 U.S. 308, 312 (2005) ("[A] federal court ought to be able to hear claims recognized

16  under state law that nonetheless turn on substantial questions of federal law, and thus justify resort

17  to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.").

18      Following the test set out in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964), the

19  Ninth Circuit instructs that a claim "arises" under the U.S. Copyright Act if: "(1) the complaint

20  asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an

21  interpretation of the Copyright Act; ***or*** (3) federal principles should control the claims." *Scholastic*

22  *Entm't, Inc. v. Fox Entm't Grp., Inc.,* 336 F.3d 982, 986 (2003) (emphasis added, citation omitted);

23  *see also JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (same, quoting *Scholastic*);

24  *Schwartz v. Paramount Pictures Corp.*, 2021 WL 779063, at *3 (C.D. Cal. Feb. 26, 2021) (same,

25  quoting *JustMed*). While a court assessing removal normally looks to the face of the complaint, a

26  plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint."

27  *Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Sols., Inc*., 2004 WL 1888769, at *2 (N.D. Cal.

28  July 21, 2004) (citing *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*,

Mitchell
Silberberg &
Knupp LLP

15969358.1

5                                    CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

463 U.S. 1, 22 (1983)). To prevent this, the so-called "artful pleading" doctrine holds that in such cases, federal-question jurisdiction will still exist in at least three circumstances: "(1) where federal law completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question." *Id.*, citing *Arco Environmental Remediation, L.L.C. v. Dep't of Health and Environmental Quality of the State of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000). "Because complete preemption often applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), *superseded by statute on other grounds*; *see also Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1473 (9th Cir. 1984) (proper to consider removal petition to "ascertain facts that would appear in a 'well pleaded' complaint," as "[t]he artful pleading doctrine would afford little protection if a plaintiff could avoid federal jurisdiction simply by leaving out material facts."), *overruled on other grounds by Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202 (1985).

For several separate reasons, federal-question jurisdiction is present here.

### A.    *The Complaint Pleads Claims Arising Under U.S. Law.*

Plaintiffs argue that the Complaint presents no federal question because "all the infringing conduct occurred extraterritorially," Mot. at 15, and "[w]holly extraterritorial acts … are not cognizable under the Copyright Act." *Id.* at 16 (quoting *Subafilms, Ltd. v. MGM-Pathe Communs. Co.,* 24 F.3d 1088, 1090 (9th Cir. 1994)) (en banc)). Plaintiffs' Complaint itself contradicts this assertion, as it alleges: "Netflix's principal office is in Los Gatos, California, in Santa Clara County and, on information and belief, ***substantially all of the tortious acts occurred there.***" Compl. ¶ 6 (emphasis added). On the very face of the Complaint, the alleged wrongful acts were thus substantially ***territorial***.

While the Complaint alleges that Netflix "displayed [the Documentary] publicly through its online streaming platform" to viewers in other countries, *id.* at ¶¶ 13-14, this allegation merely asserts that purported tortious acts took place substantially in the United States but had certain outcomes or consequences elsewhere. Alleged "tortious acts" of copyright infringement

Mitchell Silberberg & Knupp LLP

15969358.1

1    substantially occurring within the U.S. are cognizable under the U.S. Copyright Act even where a

2    plaintiff seeks recovery based on foreign exploitation. Indeed, in the Oklahoma action, which, of

3    course, Plaintiffs brought solely under U.S. copyright law, they alleged that "[t]he more significant

4    acts of infringement, the ones giving rise to the **bulk of the damages** in this case, are the acts of

5    streaming the Documentary containing the infringing Copyrighted Clips **to viewers across the**

6    **world**." *See* Evitt Decl., ¶ 4 & Ex. 3 at p. 6 (emphasis added).[1]

7         Moreover, the Complaint here alleges multiple predicate acts of infringement within U.S.

8    borders, including reproducing the Videos and creating the Documentary. *See, e.g.,* Compl. ¶ 1

9    (alleging "creation of … unauthorized cuts of Plaintiffs' copyright-protected video clips without

10   authorization inside the United States"); ¶¶ 12-13 (alleging Netflix and Royal Goode "downloaded

11   [the Videos] off … hard drives," "further edited these materials without … authorization," and

12   "fashioned new unauthorized derivative works," and then "included them in the Documentary").

13        When predicate acts occur domestically, even acts that partially occur within the United

14   States fall within the grasp of the U.S. Copyright Act. *See Subafilms,* 24 F.3d at1090 (referring to

15   "**wholly** extraterritorial acts of infringement") (emphasis added). Thus, in *Nat'l Football League v.*

16   *PrimeTime 24 Joint Venture*, 211 F.3d 10 (2d Cir. 2000), the Second Circuit found that acts within

17   the United States that terminated with the broadcast of football games to Canadian subscribers

18   violated the U.S public performance right because "the most logical interpretation of the Copyright

19   Act is to hold that a public performance or display includes 'each step in the process by which a

20   protected work wends its way to its audience.'" *Id.* at 13 (quoting *David v. Showtime/The Movie*

21   *Channel, Inc.,* 697 F. Supp. 752, 759 (S.D.N.Y.1988)). More recently, in *Am. Broad. Companies,*

22   *Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014), the Supreme Court noted that the Copyright Act's

23   legislative history makes clear that both the transmitter and the viewer of a copyrighted work

24   engage in performances. *See id.* at 441, quoting H.R. Rep. No. 94-1476 (1976) at 63 ("[A]

25

26   [1] *See also* Evitt Decl., Ex. 3 at p. 2 (claiming "Defendants have streamed the Documentary … **to**
     **viewers around the world**, including to viewers in Oklahoma" and that "Defendants' unauthorized
27   reproduction, distribution and public display of the [Videos] in this state **and throughout the world**
     is an infringement of Plaintiffs copyrights") (emphasis added).
28

Mitchell
Silberberg &
Knupp LLP

15969358.1

7                          CASE NO. 5:23-CV-03438-PCP

OPPOSITION TO MOTION TO REMAND

broadcasting network is performing when it transmits [a singer's performance of a song] … and any individual is performing whenever he or she … communicates the performance by turning on a receiving set"). The Court went on to hold that the act of streaming over the internet constitutes a performance independent of the viewers' act of performance. 573 U.S. at 441-51.[2] Here, according to the Complaint, Netflix streamed the Documentary from the United States, where it alleges "substantially all of the tortious acts occurred." Under *Aereo*, and on the Complaint's own terms, Netflix's streaming constituted acts of infringement that occurred in the United States.

Moreover, under the U.S. Copyright Act, a plaintiff may seek recovery of a defendant's profits derived from foreign exploitation of allegedly infringing works when predicate acts of alleged infringement occurred in the United States. *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,* 149 F.3d 987, 992 (9th Cir. 1998), as clarified by *Los Angeles News Serv. v. Reuters TV Intern.*, 340 F. 3d 926 (9th Cir. 2003). Plaintiff's complaint here merely restates claims raised in the Oklahoma Action: based on acts alleged to have occurred "substantially" in the United States, Plaintiffs seek recovery of profits within the ambit of the U.S. Copyright Act. *See, e.g.,* Compl. ¶¶ 6, 24, 32, 39 (despite alleged U.S. locus, seeking "infringer's profits," and if a choice is required "electing" such profits). That is, Plaintiffs assert claims and remedies that "seek[] to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Universal Inst. Corp. v. Micro Sys. Eng'r, Inc*., 924 F.3d 32, 48 (2d Cir. 2019).

### B.     The Copyright Act Completely Preempts the Allegations of Wrongdoing.

As Plaintiffs concede, preemption is "a basis for federal jurisdiction where … 'the pre-emptive force of the statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule[.]'" Mot. at 15 (citing *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020)). The U.S. Copyright

---

[2] *Aereo* thus implicitly overturned the Ninth Circuit's prior holding that for U.S. copyright law to apply, both the transmission and the reception of a performance must occur within the United States. *See Allarcom Pay Television Ltd*. v. *General Instr. Corp.,* 69 F.3d 381, 387 (9th Cir. 1995). In any event, because the Complaint is predicated on multiple wholly domestic infringements, the streaming in this case would still implicate U.S. copyright law even under *Allarcom*, which only required that "at least one alleged infringement" be "completed" in the U.S. *Id.*

Mitchell
Silberberg &
Knupp LLP

15969358.1

8                                                   CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

Act is such a statute. Just this year, at least two courts within the Ninth Circuit, including in this District, joined other courts at both district and circuit levels to conclude that complete preemption applies to claims falling within the scope of the Copyright Act, a question addressed by other Circuits but not yet the Ninth. *See Yu v. ByteDance Inc.* 2023 WL 5671932, at \*4-6 & n. 2  (N.D. Cal. Sept. 1, 2023) (preemption under the U.S. Copyright Act is complete, providing basis for removal by defendant based on unfair competition claim brought under California law) (citing cases); *Levy Prod. Grp., LLC v. R&R Partners, Inc.*, -- F. Supp. 3d. --, 2023 WL 4549361, at \*4 (D. Nev. Feb. 28, 2023) (denying motion to remand after concluding conversion claim under Nevada law over alleged copying of video series was completely preempted, holding that "state-law claims that fall under [the Copyright Act's] ambit are considered to arise under federal law for subject-matter jurisdiction purposes"); *see also, e.g. GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) ("There is increasing authority for the proposition that § 301(a) of the Copyright Act completely preempts the substantive field.") (quoting 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3582, at 742 (3d ed.2008) and citing cases).

Nor can Plaintiffs avoid complete preemption by claiming that the express preemption provisions of the Copyright Act apply only to "state" laws as opposed to foreign law. *See* Mot. at 16. Despite reference to state and common law in its second sentence, the first sentence of 17 U.S.C. § 301(a) plainly states that "***all*** legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 … are governed ***exclusively*** by this title." (emphasis added). *See Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.") (internal quotations omitted). In other contexts, courts have likewise reasoned that the preemption doctrine applies equally to foreign law as to state law. *See, e.g., LaSala v. UBS, AG,* 510 F. Supp. 2d 213, 238 (S.D.N.Y. 2007) (class actions: "Congress's intention of making federal court the 'exclusive venue' … would be frustrated if actions that would otherwise be preempted if brought under state law were permitted to proceed in state court by virtue of being brought under foreign law.").

1        **C.      *Plaintiffs' Claims Require Interpretation of the U.S. Copyright Act.***

2        Claims also arise under federal copyright law if the Complaint "requires an interpretation of

3   the Copyright Act." *See JustMed*, 600 F.3d at 1124.[3] Because the Complaint asserts that Netflix's

4   alleged tortious acts substantially occurred within the United States, they naturally call for an

5   interpretation of the U.S. Copyright Act. But even assuming *arguendo* that a U.S. court **did**

6   endeavor to apply foreign law one claims involving U.S. parties, works, and actions, the Complaint

7   still necessarily requires interpretation of the Copyright Act, in decisive ways.

8        U.S. courts determine copyright ownership under the laws of a work's country of origin.

9   *See Lahiri v. Universal Music & Video Distribution, Inc.,* 513 F. Supp. 2d 1172, 1176 (C.D. Cal.

10  2007) ("Initial ownership of a copyrighted work is determined by the laws in the work's country of

11  origin."), citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 89 (2d Cir.

12  1998); *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 2016 WL 7507757, at *3 (S.D.N.Y.

13  Dec. 30, 2016) ("As a general matter, the law of the jurisdiction where an artistic work is 'created'

14  and 'first published' governs issues concerning copyright *ownership*.") (emphasis in original).

15  Here, the Videos' country of origin is indisputably the United States. Recent foreign decisions have

16  also looked to country of origin in analogous circumstances. *See, e.g.,* Decl. of James D. Berkley

17  ("Berkley Decl."), ¶¶ 2-3 & Exs. 1-2. Thus, even if the Complaint raised only foreign claims (and

18  as discussed above, it does not), a court would still have to examine the question of copyright

19  ownership under U.S. law before considering how that determination affected the foreign claims.

20  _____

21  [3] Ignoring this substantial body of case law, Plaintiffs assert that the only applicable standard is the four-factor test set out in 2005 by the Supreme Court in *Grable*, 545 U.S. at 314. *See* Mot. at 17

22  (identifying *Grable* requirements that a "federal issue" inside a "state-law claim" be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

23  court without disrupting the federal-state balance approved by Congress") (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Plaintiffs' Complaint does not assert "state-law claims," and

24  the *Grable* test captures only *one* exception to the well-pleaded complaint rule. *See City of Oakland v. BP PLC*, 969 F.3d 895, 905-06 (9th Cir. 2020). Moreover, even after *Grable,* the Ninth Circuit

25  continues to endorse the test used in *Scholastic* and *JustMed* to determine when matters "arise under" the Copyright Act, which means that test is wholly consistent with *Grable*. As addressed

26  below, even if viewed under the *Grable* factors alone, the federal issues raised by the Complaint are "necessary," "disputed," and "substantial," and are properly resolved in a federal court. *See,*

27  *e.g., Schwartz*, 2021 WL 779063, at *3 (denying motion to remand, citing *JustMed*). *Xcel Data Sys., Inc. v. Best*, 2009 WL 902412, at *5-7 (E.D. Cal. Mar. 31, 2009) (same, citing *Scholastic*).

28

Mitchell
Silberberg &
Knupp LLP

15969358.1

10                                    CASE NO. 5:23-CV-03438-PCP
**OPPOSITION TO MOTION TO REMAND**

Plaintiffs cannot avoid this issue by claiming ownership would not actually be disputed, or that ownership under the U.S. Copyright Act it is not "necessarily raised," or involves only a downstream issue of choice of law with no bearing on removal. Mot. at 17-18. The Complaint *itself* invokes the U.S. Copyright Act's work-for-hire provisions by asserting (in contradiction to the Oklahoma judgment) that Plaintiff Sepi created Videos "under the auspices" of … Whyte Monkee Productions," and that Whyte Monkee therefore is a "legal author." Compl. ¶¶ 8, 24; 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title…"); *see JustMed*, 600 F.3d at 1124 ("Although a complaint may not state a Copyright Act claim on its face, federal jurisdiction may be appropriate if resolution requires application of the work-for-hire doctrine of the Copyright Act."). In the Oklahoma Action, Plaintiffs likewise produced copyright registrations asserting Whyte Monkee to be the author of certain Videos, described as works for hire. Evitt Decl., Ex. 4.

Plaintiffs also concede (1) "[t]here is a *threshold question* of what law should be used to decide the copyright ownership" of the Videos, (2) it could well be U.S. law, and (3) the parties would take opposing positions. Mot. at 17 (emphasis added). The Complaint puts these questions directly at issue by claiming that the Videos were created in the U.S. and that Netflix's acts occurred "substantially" in the U.S., while simultaneously claiming (eleven times) that "Plaintiffs are the legal authors of their copyrighted cinematographic works and, as the legal authors, hold the exclusive rights [to] their copyrighted cinematographic works" and seeking damages for alleged violation of these rights (including remedies sought in their dismissed federal case). *See, e.g.*, Compl. ¶¶ 21, 24. This is in direct conflict with the district court's holding in the Oklahoma Action, where the court applied U.S. copyright law to find that Plaintiffs were not owners of seven of the eight Videos at all. 601 F. Supp. 3d at 1128-35. By alleging that Whyte Monkee is a "legal author" of works made in the U.S. "under its auspices," and by further quoting the Copyright Act's work-made-for-hire provisions and acknowledging the parties would take fundamentally different positions on how they apply, the Complaint on its face gives rise to a federal question that justifies

Mitchell
Silberberg &
Knupp LLP

15969358.1

1     removal.[4]

2     Finally, Plaintiffs claim that "even if the state court applied domestic law"—*i.e.,* the U.S.

3     Copyright Act—any dispute would not actually be over federal issues or standards, but instead over

4     mere factual ones, and their application to non-federal rules of agency. Mot. 18-19. Put differently,

5     they assert that the question whether a work is "made for hire" is one decided under state law. This

6     argument flies in the face of the foregoing authorities and of the Supreme Court's 1989 holding that

7     "[e]stablishment of a ***federal*** rule of agency, rather than reliance on state agency law, is particularly

8     appropriate here given the [Copyright] Act's express objective of ***creating national, uniform***

9     ***copyright law by broadly pre-empting state statutory and common-law copyright regulation***."

10    *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (emphasis added). Rather than

11    creating an enclave within the U.S. Copyright Act where courts could defer to state law, *Reid* did

12    just the opposite. Plaintiffs' concede these federal issues would be litigated, and "[a] plaintiff may

13    not artfully omit facts that indicate federal jurisdiction." *Burda v. M. Ecker Co*., 954 F.2d 434, 438

14    (7th Cir. 1992). And as stated above, the Complaint itself invokes work-for-hire principles to cast

15    Whyte Monkee as an author. Plaintiffs' Complaint requires interpretation of the Copyright Act.

16    ### D.     Plaintiffs' Claims Raise Substantial Issues Relating to Federal Regulation of International Copyright Matters.

17    Federal question jurisdiction exists when resolution of claims "requires … determinations

18

19    _____

20    [4] On a more basic level, when applicable domestic law is the Copyright Act, a California state court faced with claims under foreign law—particularly ones based on U.S. conduct—would be ***required***

21    to interpret the Copyright Act. This is because, under California choice of law principles, a court applying foreign law "is not enforcing foreign rights but choosing a foreign rule of decision as the

22    appropriate one to apply," and may apply conflicting law only after weighing the competing governmental interests. *Reich v. Purcell*, 67 Cal. 2d 551, 553–555 (1967); *Am. Bank of Com. v.*

23    *Corondoni*, 169 Cal.App.3d 368, 372 (1985) (same). Indeed, "California's general preference is to apply its own law," which includes federal law. *Id.*; *Kashani v. Tsann Kuen China Enter. Co*., 118

24    Cal. App. 4th 531, 543 (2004) ("California law includes federal law."); *Browne v. McDonnell*

25    *Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal. 1980) ("Under the government interest analysis, California will apply its own law unless it is shown that there is a compelling reason to displace

26    forum law."). As a result, Plaintiffs' Complaint requires not only interpretation of ownership and work-for-hire principles under the Copyright Act, but also interpretation of the Act's fair use

27    standards (17 U.S.C. § 107) and its provisions analogous to foreign moral rights (such as 17 U.S.C.

28    § 106(2) [right to prepare derivative works] and § 106A ["[r]ights of certain authors to attribution and integrity"]).

Mitchell
Silberberg &
Knupp LLP

15969358.1

12          CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

1   that directly and significantly affect foreign relations." *Hyatt Corp. v. Stanton*, 945 F. Supp. 675,

2   691 (S.D.N.Y. 1996). Copyright law has international implications, with the Berne Convention

3   "set[ting] the standards governing international copyright relations." *Unicolors, Inc. v. H&M*

4   *Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1078 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2583 (2023)

5   (citing *Golan v. Holder*, 565 U.S. 302, 306 (2012); *see Subafilms*, 24 F.3d at 1097-98 & n. 10

6   (Congress has made efforts to secure a stable international intellectual property regime so as to

7   further "the goal of protecting the works of American authors abroad."). Because the Complaint

8   raises significant issues that bear directly on the federal regulation of international copyright

9   matters, the federal courts have exclusive jurisdiction over the present lawsuit for this separate

10  reason.

11          Plaintiffs downplay any such concerns as "far-fetched" (Mot. at 13). But *Subafilms* stressed

12  the role of Congress in overseeing the international copyright regime and the danger that this

13  regime might be disrupted, likening it to a "delicate field of international relations." 24 F.3d. at

14  1098 (quoting *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957)) (emphasis

15  added). Plaintiffs' Complaint lies in this same field, and nowhere more so than when it requests a

16  U.S. court to recognize Plaintiffs' purported "moral rights" in the Videos under foreign law. U.S.

17  copyright law "generally does not recognize" moral rights, which typically include so-called "rights

18  of attribution," relating to recognition of authorship, and "rights of integrity," which "include the

19  artist's right to prevent the modification, mutilation, or distortion of his work." *Garcia v. Google,*

20  *Inc.,* 786 F. 3d 733, 746 (9th Cir. 2015); *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 81 (2d Cir.

21  1995).

22          When the United States joined the Berne Convention in 1989, Congress delicately balanced

23  the question of international moral rights. As Plaintiffs point out, the Berne Convention creates a

24  system of reciprocal obligations between member counties, including the United States and the

25  countries named in the Complaint. *See* Mot. at 20 n. 3.[5] Yet Congress sharply limited the

26  Convention's reach through the Berne Convention Implementation Act of 1988, which "declared

---

[5] At one point, Plaintiffs appear to imply that their foreign laws claims themselves arise from the Berne Convention. *See* Mot. at 20 n. 3.

**OPPOSITION TO MOTION TO REMAND**

Mitchell
Silberberg &
Knupp LLP

15969358.1

1   that [the treaty was] not self-executing, existing law satisfied the United States' obligations in

2   adhering to the Convention, its provisions are not enforceable through any action brought pursuant

3   to the Convention itself, and neither adherence to [it] nor the implementing legislation expands or

4   reduces any rights under federal, state, or common law to claim authorship of a work or to object to

5   any distortion, mutilation, or other modification of a work." *Helmsley-Spear*, 71 F. 3d at 83.

6          The Berne Convention's implementation made U.S. legal treatment of foreign moral rights

7   a matter of federal policy. According to the legislative history, "[i]t should be absolutely clear that

8   all copyright rights available in courts in the United States must be found exclusively within the

9   provisions of title 17." 133 Cong. Rec. H1293, H1295 (Daily Ed. March 16, 1987) (statement of

10  Rep. Kastenmeier). A complaint filed in a U.S. state court alleging violation of foreign moral rights

11  runs headlong into this federal policy, especially if (as here) it seeks liability for acts alleged to

12  have occurred "substantially" in the U.S. A federal court is the proper forum to assess such

13  conflicts, as "enforcement of particular foreign laws by American courts may not reflect United

14  States policy—and, in any event, does not represent that policy as formulated by an appropriate

15  branch of government." *Att. Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d

16  103, 137 (2d Cir. 2001). Moreover, such claims are "capable of resolution in federal court without

17  disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258

18  (2013).

19         The Court should find there is federal-question jurisdiction.[6]

20  **III.    THIS COURT ALSO HAS DIVERSITY JURISDICTION**

21         Where removal is based on diversity jurisdiction, "a defendant's notice of removal need

22  include only a plausible allegation that the amount in controversy exceeds the jurisdictional

23  threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Evidence

24  establishing the amount [in controversy] is required … only when the plaintiff contests, or the court

25  questions, the defendant's allegation." *Id.*

26         Plaintiffs do not deny there is complete diversity of citizenship between the parties. *See*

27

28  ──────────────────
    [6] Even if the Court finds federal question jurisdiction over some of Plaintiffs' claims, it may
    exercise supplemental jurisdiction over any remaining ones. 28 U.S.C. § 1367.

Mitchell
Silberberg &
Knupp LLP

15969358.1

14                                    CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

Mot. at 12 ("[e]xcept for … diversity of citizenship, the notice of removal is incorrect"). Defendant Netflix is a "citizen" of the State of California and the State of Delaware, while Plaintiffs are citizens of neither: they are citizens of the State of Virginia. Compl. ¶¶ 3-4; Dkt. 1 at ¶¶ 8-9; Dkt. 1-3 at 18. *See Corral v. Select Portfolio Servicing, Inc.*, 2015 WL 13687117, at *1-2 (N.D. Cal. June 4, 2015) (denying motion to remand where plaintiff "concede[d] diversity of citizenship"). Rather, Plaintiffs challenge the amount in controversy. Their argument lacks merit for numerous reasons.

**A.    The Amount-in-Controversy Requirement Is Satisfied by a Preponderance of the Evidence.**

"[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover," *Arias v. Residence Inn by Marriott*, 936 F. 3d 920, 927 (9th Cir. 2019) (emphasis in original), and includes "all amounts 'at stake' in the litigation at the time of removal, ***whatever the likelihood that [the plaintiff] will actually recover them***."[7] *Id.* (quoting *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 417 (9th Cir. 2018)) (emphasis added). To determine amount in controversy, the "Court must look to the circumstances as of … the date the Complaint was filed." *James River Ins. Co. v. Liberty Surplus Ins. Corp.*, 2018 WL 11346744, at *5 (C.D. Cal. Mar. 6, 2018). The amount may include "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Chavez*, 888 F.3d at 416 (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)). Whether the minimum is met is assessed under a preponderance of the evidence test: jurisdiction is proper as long as "it is 'more likely than not' that the amount in controversy exceeds [$75,000]." *Serving Seniors Care, Inc. v. Serratore-Rebong Grp. of Companies Corp.,* 2023 WL 4596788, at *3 (N.D. Cal. July 17, 2023) (quoting *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007)). "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally

---

[7] To be clear, Netflix emphasizes that Plaintiffs' duplicative claims in this action are as meritless as those dismissed in the Oklahoma Action. However, "[i]n measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Zeppeiro v. Green Tree Servicing, LLC*, 2014 WL 12596312, at *5 (C.D. Cal. June 16, 2014) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)).

1  possible that damages might be less than the requisite … amount." *Arias*, 936 F.3d at 927 (internal

2  quotations omitted).

3      "When, as here, 'a defendant's assertion of the amount in controversy is challenged … both

4  sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-

5  in-controversy requirement has been satisfied.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d

6  1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee*, 554 U.S. at 554). Although "the court cannot

7  base … jurisdiction on a [d]efendant's speculation and conjecture … [t]he burden is not 'daunting,'

8  and a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for

9  damages.'" *Narayan v. Compass Grp. USA, Inc.*, 284 F. Supp. 3d 1076, 1090 (E.D. Cal. 2018)

10 (emphasis in original) (citations and some internal quotations omitted).

11      **B.    Netflix May Rely on Evidence Submitted in Opposition.**

12      Plaintiffs argue that Netflix was required to supply all evidence supporting the amount in

13 controversy in its notice of removal, and that diversity jurisdiction is not established because the

14 facts asserted there "fall[]… short." *See* Mot. at 22-23. As already noted, this is not the law. *See*

15 *Dart Cherokee*, 574 U.S. at 89 (the "notice of removal need include only a plausible allegation that

16 the amount in controversy exceeds the jurisdictional threshold"); *Ferguson v. KIA Motors Am. Inc.*,

17 2021 WL 1997550, at *2 (E.D. Cal. May 19, 2021) ("A defendant's initial burden in establishing

18 the amount in controversy for removal purposes is minimal.") (citing *id.*). Even from before *Dart*

19 *Cherokee*, it was well established that when a defendant submitted evidence in opposition to a

20 motion to remand, the submission was treated as an amendment to the notice of removal. *Cohn v.*

21 *Petsmart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002) (quoting *Willingham v. Morgan,* 395 U.S.

22 402, 407 n. 3 (1969): "it is proper to treat the removal petition as if it had been amended to include

23 the relevant information contained in the later-filed affidavits")).

24      Evidence of amount in controversy also need not establish it directly. A removing defendant

25 may combine evidence "'with reasonable deductions, reasonable inferences, and other reasonable

26 extrapolations' to establish that the amount in controversy 'more likely than not' exceeds $75,000."

27 *Flier v. FCA US LLC*, 2021 WL 10894075, at *2 (N.D. Cal. Oct. 4, 2021) (quoting *Ibarra v.*

28 *Manheim Investments, Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015)). A court may consider such

Mitchell
Silberberg &
Knupp LLP
15969358.1

16    CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

1   evidence even if it would be excluded as hearsay for other purposes. *Jimenez v. Ford Motor Co.,*

2   2021 WL 5149865, at *1 (N.D. Cal. Nov. 5, 2021) (noting "courts routinely consider hearsay

3   evidence in [the] context" of "assessing the amount in controversy") (citing cases); *Pretka v. Kolter*

4   *City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) ("[T]he substantive jurisdictional

5   requirements of removal do not limit the types of evidence that may be used…").

### 1. Plaintiffs' 2022 Settlement Demand Alone Establishes That the Amount in Controversy Exceeds the Threshold.

7   Assessment of the amount in controversy may consider a plaintiff's prior settlement

8   demands. *Cohn v. Petsmart, Inc.*, 281 F.3d at 839-40 (settlement letter demanding $100,000 to

9   settle trademark dispute sufficed to establish amount in controversy, since "[t]he undisputed

10  evidence shows that Cohn values his trademark rights—the object of the litigation—as worth more

11  than $100,000"); *Kary v. Combs*, 2017 WL 6888715, at *1 (C.D. Cal. Aug. 28, 2017) (combined

12  with prior settlement letter, description in complaint of alleged injuries, pain, and suffering

13  "support[ed] an inference that the Plaintiff has suffered more than $75,000 in damages," meeting

14  preponderance standard) (citing *Petsmart,* 281 F.3d at 840).

15  Here, Plaintiffs made an oral settlement demand of ***millions of dollars*** in the Oklahoma

16  Action, in which they claimed "the bulk of the damages" arose from "acts of streaming the

17  Documentary containing the [Videos] to viewers across the world." *See* Evitt Decl., ¶ 6 & Ex. 3 at

18  p. at 6. This alone permits a reasonable inference that Plaintiffs value the amount in controversy in

19  this action as above the jurisdictional limit.

### 2. The Complaint Seeks Remedies For Which the Amount At Stake Exceeds $75,000.

22  The Complaint seeks every possible form of remedy or relief available under the laws of

23  ***eleven different countries***, alleging violation of both moral and economic rights. *See* Compl. ¶¶ 22-

24  24, 30-32, 38-39, 45-47, 53-55, 61-63, 69-71, 77-79, 85-87, 93-95, 101-103. For purposes of

25  amount in controversy, a court will assume that Plaintiffs would prevail on all claims at trial, and

26  be entitled to the maximum recovery afforded. *Arias,* 936 F. 3d at 927; *Zeppeiro,* 2014 WL

27  12596312, at *5. The jurisdictional minimum is met here in multiple ways:

28

Mitchell
Silberberg &
Knupp LLP

15969358.1

CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

1    ***Statutory Damages***.  Plaintiffs seek "all available remedies and relief available under

2    Canadian copyright law" with respect to the eight Videos. *See* Compl. ¶¶ 9, 33-39. Unlike the

3    United States, Canadian law makes statutory damages available to prevailing copyright plaintiffs

4    without registration, at amounts up to CA$20,000 per work where the alleged infringement is for

5    "commercial" purposes. *See* Canadian Copyright Act at sections 34.1, 38.1(a) (Berkley Decl., ¶ 4

6    & Ex. 3); *id.*, ¶ 5 & Ex. 4 (Canadian government web page: "In Canada, you can sue a third party

7    who infringes your copyright **and** claim statutory damages even if the copyright is not registered.")

8    (emphasis in original).[8] The amount in controversy in this action is thus at least $160,000 in

9    Canadian dollars, approximately $116,000 U.S. at the time the Complaint was filed. *See id.*, ¶ 6 &

10   Ex. 5; *Unlockd Media, Inc. Liquidation Tr. v. Google LLC*, 2023 WL 6226379, at *3 (N.D. Cal.

11   Sept. 22, 2023) (taking judicial notice of government-posted foreign exchange rate); *Alexander v.*

12   *JPMorgan Chase Bank*, 2015 WL 12028676, at *2 & fn. 1 (S.D. Cal. Sept. 11, 2015) (taking

13   judicial notice of submitted exhibits "to conclude that more than $75,000 is at issue in this case").

14   ***Moral Rights***.  Despite alleging that Netflix's conduct occurred substantially in the United

15   States—where Congress has strictly limited the recognition of moral rights—Plaintiffs seek "all

16   available remedies and relief" for alleged violations of moral rights under foreign law. In countries

17   recognizing them, remedies for violation of moral rights may include not only injunctive relief

18   (such as to provide attribution, or end alleged "mutilation"), but also compensatory damages

19   designed to address alleged reputational or other non-monetary harms to the author, fixed at the

20   court's discretion. *See, e.g.,* Berkley Decl., ¶¶ 7-11 & Exs. 6-10. "When a complaint does not

21   allege a particular amount of non-economic damages, a defendant can analogize to awards given in

22   similar cases." *Castillo v. ABM Indus., Inc.*, 2017 WL 5609791, at *3 (C.D. Cal. Nov. 20, 2017)

23   (citing cases). "Such cases must be factually analogous, but … need not be identical." *Id.*

24   Plaintiffs have alleged that Netflix "streamed the Documentary … to viewers around the

25   world," without giving attribution, and that this requires "measures to restore artistic integrity."

26

27   ───────────────

     [8] Here and elsewhere in this Opposition, Defendants raise issues of foreign law pursuant to Fed. R.

28   Civ. P. 44.1. "In determining foreign law, the court may consider any relevant material or source …
     whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Id.*

Mitchell
Silberberg &
Knupp LLP

15969358.1

18                    CASE NO. 5:23-CV-03438-PCP
**OPPOSITION TO MOTION TO REMAND**

Evitt Decl., Ex. 3 at p. 2; Compl. ¶¶ 12-13, 24, 32, 39 *et seq*. Awards of moral rights damages in jurisdictions named in the Complaint include:

- **France**:  In *Davidovici v. Koons*, the Paris Court of Appeal in 2021 awarded a photographer 61,000 euros (then approximately $73,000) for moral rights violations alleged in connection with one sculpture by artist Jeff Koons. Berkley Decl., Exs. 6-7.

- **Canada**:  A 2018 case, *Collett v. Northland Art Company*, awarded a photographer moral rights damages of CA$10,000 (plus $45,000 statutory and $25,000 punitive damages) for alleged infringement of six photographs and two web pages. *Id.,* Ex. 8.

- **Spain:**  In 2006, a Spanish appeals court awarded the musical artist Tom Waits 30,000 euros in moral rights damages over a television advertisement for the car manufacturer Volkswagen-Audi. *Id.*, Ex. 9.

- **Australia**:  In 2012, in *Perez v Fernandez,* an Australian court awarded the musical artist known as Pitbull moral rights damages of A$10,000 for alteration of one sound recording streamed on defendant's website. *Id.,* Ex. 10.

Based on these examples alone, it can be reasonably inferred that merits aside, the "maximum recovery" sought by the Complaint for the aggregate alleged moral rights damages exceeds U.S. $75,000.

     ***Injunctive Relief.***  "When a plaintiff seeks injunctive as well as monetary relief, the value of the injunction for purposes of the amount in controversy can be assessed from 'either viewpoint'—the plaintiff's benefit or the defendant's cost." *Rios v. New York & Co., Inc*., 2017 WL 3575220, at *2 (C.D. Cal. Aug. 17, 2017) (quoting *Ridder Bros. Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944)). Here, Netflix conservatively estimates that if Plaintiffs (somehow) were to secure injunctive relief requiring removal of all alleged uses of the Videos from the Documentary in the eleven named countries, no matter how brief or non-infringing, the cost of complying with the injunction would be at least $50,000. Declaration of Liz Mason, ¶¶ 1-8 & Ex. 1. Such an injunction would also require significant work and expense by the Documentary's producer, Royal Goode. *Id.,* ¶¶ 6, 8.

Mitchell
Silberberg &
Knupp LLP

15969358.1

19                    CASE NO. 5:23-CV-03438-PCP
**OPPOSITION TO MOTION TO REMAND**

***Attorneys' Fees.*** Plaintiffs do not contest that attorneys' fees, including ***future*** attorneys' fees, are included when assessing the amount in controversy. Mot. at 26. Their only argument is that the Notice of Removal did not "calculate[e] what [Netflix] expects those fees to be" or "identify which foreign copyright claims permit recovery of such fees and under what operative statutes." *Id.* Under the removal statute and *Dart Cherokee*, no such evidence was required there.

"[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are 'at stake' in the litigation.'" *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (quoting *Chavez*, 888 F.3d at 417). This is so whether the award of such fees is mandatory or discretionary, and includes all fees that would be reasonably incurred by the plaintiff at least through trial. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Faircloth v. AR Res., Inc.*, 2020 WL 2747781, at *3 (N.D. Cal. May 27, 2020); *see also Fierro v. Cap. One, N.A.*, 2022 WL 17486364, at *4 (S.D. Cal. Dec. 6, 2022) (denying motion to remand). Entitlement of prevailing parties to recover their attorneys' fees, sometimes called the "English Rule," also has been called the "world standard."[9] At least ***eight*** of the eleven countries named in the Complaint make attorneys' fees of a prevailing copyright litigant recoverable by statute, either on a mandatory or discretionary basis. These include Canada (under Section 34(3) of the Canadian Copyright Act); France (Article 700 of the French Code of Civil Procedure); Germany (Article 91 of German Code of Civil Procedure); Italy (Article 91 of Italian Code of Civil Procedure); Spain (Articles 394 through 398 of Spanish Code of Civil Procedure); Australia (Parts 40 of Federal Court and 22 of Federal Circuit Court Rules); the United Kingdom (Part 44 of U.K. Civil Procedure Rules); and New Zealand (Parts 14 of High Court and District Court Rules). *See* Berkley Decl., ¶¶ 4, 12-20 & Exs. 3, 11-19. Were Plaintiffs to litigate their complaint through trial and prevail, as must be assumed here, it is reasonable to conclude that at least 70% of their total attorneys' fees would be at stake in the litigation.

---

[9] *See, e.g.,* V. Lopez & E. Maccarrone, Leading the World in the Wrong Direction: Is It Time for the United States to Adopt the World Standard Loser Pays Rule in Civil Litigation, 32 NE. J. LEGAL Stud. 1 (2014) at p. 3.

1    Courts in the Ninth Circuit frequently award upwards of $100,000 in attorneys' fees to

2  prevailing plaintiffs in copyright litigation. *See, e.g., Milton H. Greene Archives, Inc. v. Julien's*

3  *Auction House LLC*, 345 F. App'x 244, 249 (9th Cir. 2009) (affirming district court's award of

4  approximately $340,000 in attorneys' fees despite plaintiff's "limited success"); *WB Music Corp. v.*

5  *Royce Int'l Broad. Corp.*, 2018 WL 6177237, at *7 (C.D. Cal. July 9, 2018), *aff'd sub nom. WB*

6  *Music Corp. v. Stolz*, 814 F. App'x 286 (9th Cir. 2020) (awarding $864,278.75 in attorneys' fees to

7  music publisher plaintiffs after jury trial); *Erickson Prods. Inc. v. Kast*, 2017 WL 3670790, at *5

8  (N.D. Cal. Aug. 25, 2017) (in copyright action brought by photographer, awarding $182,961.00 in

9  attorneys' fees to plaintiff following three-day trial).

10    Public filings reflect that all of Plaintiffs' attorneys, or similarly situated attorneys working

11  at or with their firms, charge normal billing rates of at least $350 to $400 per hour. Berkley Decl.,

12  ¶¶ 21-23 & Exs. 20-22. Where attorneys' fees would be recoverable, a defendant may combine

13  such evidence with reasonable estimates of the attorneys' fees that plaintiffs would incur through

14  trial, and the court may use these to determine the amount in controversy requirement is satisfied.

15  *See, e.g., Faircloth*, 2020 WL 2747781, at *3 (relying on defendant's estimate of plaintiff's fees

16  through trial and denying motion to remand); *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843,

17  at *2 (N.D. Cal. Jan. 8, 2019) (crediting defendants' evidence of required attorney time and hourly

18  rates charged by plaintiffs' counsel); *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004,

19  1011 (N.D. Cal. 2002) (denying motion for remand: any shortfall of the jurisdictional minimum

20  was likely to be exceeded by plaintiff's attorneys' fees "[g]iven the factual controversies in this

21  case and the scope of discovery anticipated in preparation for trial").[10]

22    Here, a full adjudication of the Complaint through trial would involve multiple dispositive

23  motions (including at least this motion for remand, a motion to dismiss under various grounds and

24  in the alternative to transfer, and a motion for summary judgment), expert testimony involving the

25

---

26  [10] That Plaintiffs' counsel may be engaged under a contingency-fee arrangement does not change the analysis, as computable fees would remain an available remedy. *See Blanchard v. Bergeron*,

27  489 U.S. 87, 94 (1989) (describing "lodestar approach" as "the centerpiece of attorney's fee awards," explaining, "[w]e have never suggested that a different approach is to be followed in cases

28  where the prevailing party and his (or her) attorney have executed a contingent-fee agreement").

Mitchell
Silberberg &
Knupp LLP

15969358.1

21                    CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

copyright laws of eleven different countries, fact and expert discovery, and a trial on eleven different sets of causes of action, each with multiple sub-parts. Even an extremely conservative estimate of the hours to be incurred by Plaintiffs' counsel for all of these activities would total at bare minimum **425 hours**. Assuming a discounted rate of only $300 per hour and an overall multiplier of 70%, this in itself yields attorneys' fees of $89,250. *See* Evitt Decl., ¶¶ 11-13.

### C.     *Plaintiffs Offer No Evidence as to Amount in Controversy.*

Plaintiffs submit **no evidence whatsoever** to controvert the notice of removal's assertion that the amount in controversy requirement is satisfied. *See Dart Cherokee*, 554 U.S. at 88 ("***both sides***" are to submit evidence). "Plaintiff[s] cannot simply sit silent and take refuge in the fact that it is Defendant's burden to establish the grounds for federal jurisdiction." *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014). Nor can they argue that this is a case where information is only in Netflix's possession: "all available remedies and relief" includes items that Plaintiffs alone can evaluate, or can equally evaluate, such as damages for alleged reputational harm, attorneys' fees, or the value to Plaintiffs of potential injunctive relief. *See Rios v. New York & Co., Inc.*, 2017 WL 3575220, at *2 ("amount in controversy can be assessed from 'either viewpoint'… plaintiff's benefit or the defendant's cost"). The preponderance of the evidence—indeed, overwhelming evidence—establishes that the amount in controversy exceeds $75,000.

## IV.     NETFLIX'S REMOVAL WAS PROCEDURALLY PROPER

Plaintiffs concede that Netflix removed this action to federal court, and did so before it was served. *See* Mot. at 11 ("It removed this action after all."); *id.* at 32 ("[the] notice of removal was filed before [Netflix] was ever served."). Nonetheless, they now attempt to re-cast removal as an ongoing state of affairs, offering arguments why "removal is erroneous under the removal statutes." Mot. at 27. Their strained arguments ignore logic, the plain language of the removal statute, and the weight of authority in this District.

### A.     *This District "Consistently" Permits Pre-Service (So-called "Snap") Removal by a Forum Defendant in a Diversity Action,*

Plaintiffs concede that the so-called "forum defendant" rule applies only when the sole basis of jurisdiction is diversity. *See* Mot. at 27 (citing 28 U.S.C § 1441(b)(2)). Even assuming there

Mitchell
Silberberg &
Knupp LLP

15969358.1

22     CASE NO. 5:23-CV-03438-PCP

**OPPOSITION TO MOTION TO REMAND**

were no other basis for jurisdiction (which is not the case), there was no violation of this rule.

"The Northern District of California has consistently held a defendant may remove an action prior to receiving proper service, even when the defendant resides in the state in which the plaintiff filed the state claim." *Humana Inc. v. Handa Pharms., LLC*, 2023 WL 5227191, at *3 (N.D. Cal. Aug. 15, 2023) (quoting *Loewen v. McDonnell*, 2019 WL 2364413, at *7 (N.D. Cal. June 5, 2019) (in turn quoting *Sherman v. Haynes & Boone*, 2014 WL 4211118, at *1 (N.D. Cal. Aug. 22, 2014)); *see also Fobb v. Uber Techs., Inc.,* 2022 WL 620336, at *2 (N.D. Cal. Mar. 3, 2022) (denying motion to remand: "The decisions in this district to have considered the question nearly unanimously support [removing] Defendants' position."); *Monfort v. Adomani, Inc.*, 2019 WL 131842, at *3 (N.D. Cal. Jan. 8, 2019) (collecting cases).

Plaintiffs' laundry list of convoluted arguments against this consistent and "nearly unanimous" view in the Northern District are unavailing. Misleadingly, Plaintiffs claim that section § 1441(b)(2) "plainly prohibits diversity jurisdiction where a forum defendant has been properly joined and served," and argue that if a forum defendant removes but later is "properly joined and served," this deprives the court of diversity jurisdiction. Mot. at 28. This is not what § 1441(b)(2) says. Instead, the statute provides that actions "otherwise removable" only on the basis of diversity jurisdiction "may not ***be removed*** if any of the parties … properly joined and served … is a citizen of the State in which such action is brought." The plain language ***assumes*** removability—*i.e.*, jurisdiction upon removal—and simply limits ***when*** and ***if*** an act of removal can take place. Nothing about it "prohibits diversity jurisdiction" over a defendant served after removal.

Plaintiffs nonetheless argue that the section's use of a "negative modal verb"—that is, "may not"—somehow indicates the provision is not "concerned with … timing" but with the overall "propriety of the removal" viewed on a continuing basis. Mot. at 29. But this argument receives no support from the statutory text and ends up self-contradictory. Plaintiffs ***themselves*** refer to removal as an action that takes place at a particular point in time (*e.g.,* Netflix "removed this action"), and even their discussion of modal verbs treats removal this way, precisely as the statute does. *See* Mot. at 28 ("Modal verbs speak to the ***propriety of an action***.") (emphasis added); 28 U.S.C. § 1441 (referring to when actions are "removable," when they "may be removed," and when

**OPPOSITION TO MOTION TO REMAND**

they "may not be removed"). Plaintiffs identify no authority to support their strained interpretation

that the removal statute is meant to be consulted *after* removal to determine whether an action

remains "removable," a view that defies well-settled law. *Boggs v. Lewis,* 863 F.2d 662, 664 (9th

Cir. 1988) ("[T]he clear rule is that, if removal was proper at the time of removal, federal

jurisdiction is not defeated by later changes in the law or developments in the suit.").[11]

### B.  The "Unanimity Rule" Does Not Bar Removal by a Lone Defendant.

"The so-called 'rule of unanimity'… merely says that 'all the defendants must join in the

application' for removal." *Proctor,* 584 F. 3d at 1225 (quoting *Chicago, Rock Island, & Pacific

Railway Co. v. Martin*, 178 U.S. 245, 248 (1900)). With tortured logic, Plaintiffs argue that because

"*all* defendants who have been properly joined and served must join in or consent to the removal of

the action," 28 U.S.C. §1446(b)(2)(A) (emphasis added), it follows from use of the word "all" that

a single defendant may only remove if already "properly joined and served," since otherwise the

requirement would go unmet, and there "cannot be unanimity amongst a null set." Mot. at 32. In

other words, Plaintiffs argue that the word "all" implies a minimum of one served defendant to

"join" or "consent" to the removal. The argument is frivolous.

First, the argument defies common sense. Webster's Dictionary gives one definition of "all"

as "*any whatever*." (*See* https://www.merriam-webster.com/dictionary/all.) Carried to its logical

extreme, Plaintiffs' argument leads to the conclusion that if a plaintiff from California sues a single

New York defendant in a California state court, that defendant— whether served or not—cannot

remove because there are no served defendants to "join" or give "consent." To state this

proposition is to reveal its absurdity.

Not surprisingly, Plaintiffs point to no Ninth Circuit, or even Northern District, case that

---

[11] Congress has entertained, but never enacted, revisions to the removal statute that would allow
such a procedure, but this only highlights that no such procedure exists. *See* Examining the Use of
"Snap" Removals to Circumvent the Forum Defendant Rule: Hearing Before the Subcomm. on
Cts., Intell. Prop., and the Internet of the H. Comm. on the Judiciary, 116th Cong. 11-12 (2019)
(Testimony of Arthur D. Hellman, Professor of Law Emeritus, Univ. of Pittsburgh School of Law:
"Our proposal would allow the plaintiff to counter snap removal by serving one or more in-State
defendants after the case has been removed. … [W]e are calling it the 'snapback' mechanism.").

Mitchell
Silberberg &
Knupp LLP

15969358.1

24                              CASE NO. 5:23-CV-03438-PCP

OPPOSITION TO MOTION TO REMAND

1   adopts their warped reading of this provision, which is at odds with the legislative history. [12] The

2   statute clearly means that where there are *additional* defendants other than a removing defendant,

3   those defendants must join or consent in the removal petition if they have been "properly joined

4   and served." *See* H.R. Rep. No. 112-10, at 13 (2011) ("New subparagraph (b)(2)(A) codifies the

5   well-established 'rule of unanimity'" for cases involving *multiple defendants*.") (emphasis added);

6   *J.H. v. City of Philadelphia,* 2017 WL 5668051, at *1 (E.D. Pa. Nov. 27, 2017) ("Under the

7   unanimity rule, 'when there is *more than one defendant*, all must join in the removal petition.'")

8   (quoting *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985)) (emphasis added); *Rickley v. Cnty. of

9   Los Angeles,* 2008 WL 11349767, at *3 (C.D. Cal. Sept. 23, 2008) ("The 'unanimity rule' holds

10  that in a matter with *multiple defendants*, all defendants must join in the petition for removal.")

11  (citing *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232 (9th Cir. 1986)) (emphasis added).

12          **C.      The "Removal Timeframe" Poses No Bar to Removal.**

13          Plaintiffs make the bizarre argument that because Netflix removed "before [it] was ever

14  served," it failed to remove "within 30 days after the receipt" of the Complaint as required by 28

15  U.S.C. § 1446(b). Mot. at 33. As Plaintiffs themselves concede, this argument is foreclosed by

16  Ninth Circuit precedent, which allows a defendant to remove "on the basis of its own information,

17  provided … it has not run afoul of either of the thirty-day deadlines." *Id.* (quoting *Roth v. CHA

18  Hollywood Med. Ctr., L.P.,* 720 F.3d 1121, 1125 (9th Cir. 2013)).[13]

19                              **CONCLUSION**

20          For the foregoing reasons, Plaintiffs' Motion to Remand should be denied.

21

22  [12] The one case on which Plaintiffs rely for this argument, *Cin. Ins. Co. v. Omega Elec. & Sign Co.*

23  2023 U.S. Dist. LEXIS 11856 (E.D. Mich. Jan. 24, 2023), fails to appreciate the absurdity of this
    strained reading of the statutory text and applies a Sixth Circuit standard not recognized in this

24  Circuit. In any event, the Sixth Circuit too holds § 1446(b)(2)(A) to apply to "cases with *multiple*
    defendants." *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 761 (6th Cir. 2016) (emphasis added).

25  [13] Moreover, the argument ignores the very language it quotes: that a defendant's "receipt … of the

26  initial pleading" may occur "through service *or otherwise*." Mot. at 32 (quoting 28 U.S.C.
    § 1446(b)(1)) (emphasis added). Plaintiffs agree that Netflix "received" the complaint *without*

27  being served on or about June 22, 2023. *See* Tully Decl., ¶¶ 2-5. Although bare receipt, without
    service, could not trigger the running of any 30-day deadline to remove, the Notice of Removal,

28  filed on July 11, 2023, was clearly filed "within 30 days after the [Complaint's] receipt."

Mitchell
Silberberg &
Knupp LLP

15969358.1

                                                    25              CASE NO. 5:23-CV-03438-PCP

                                    **OPPOSITION TO MOTION TO REMAND**

DATED: November 10, 2023                    RESPECTFULLY SUBMITTED,

                                            ROBERT H. ROTSTEIN
                                            EMILY F. EVITT
                                            JAMES D. BERKLEY
                                            MITCHELL SILBERBERG & KNUPP LLP


                                            By: /s/ Emily F. Evitt
                                                Emily F. Evitt
                                                Attorneys for Defendant Netflix, Inc.

Mitchell
Silberberg &
Knupp LLP

15969358.1

26                    CASE NO. 5:23-CV-03438-PCP
OPPOSITION TO MOTION TO REMAND