ROBERT H. ROTSTEIN (SBN 72452), rxr@msk.com
EMILY F. EVITT (SBN 261491), efe@msk.com
JAMES D. BERKLEY (SBN 347919), jdb@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant
Netflix, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WHYTE MONKEE PRODUCTIONS, LLC, and TIMOTHY SEPI,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NETFLIX, INC.<br><br>　　　　　Defendant. | CASE NO. 5:23-CV-03438-PCP<br><br>Honorable P. Casey Pitts<br><br>***Removed from Superior Court for Santa Clara County Case No. 23CV413161***<br><br>**SUPPLEMENTAL BRIEF OF DEFENDANT NETFLIX, INC. IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND TO STATE COURT**<br><br>[Supplemental Declaration of James D. Berkley filed concurrently herewith]<br><br>Prior Hearing Date: Thursday, Dec. 14, 2023<br>Time: 10:00am<br>Courtroom: 8 (4th Floor)<br>Judge: Hon. P. Casey Pitts<br><br>Action Filed: March 17, 2023<br>Date of Removal: July 11, 2023 |

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ................................................................................................................1

**ARGUMENT** ........................................................................................................................2

**I.   A NUMBER OF COUNTRIES WOULD APPLY U.S. LAW TO DETERMINE COPYRIGHT OWNERSHIP** ...................................................................................2

**II.  EVEN ASSUMING ARGUENDO THAT NO FOREIGN COURT WOULD APPLY U.S. LAW TO OWNERSHIP (AND SOME CLEARLY WOULD), A FEDERAL QUESTION AS TO OWNERSHIP WOULD STILL EXIST** ...................7

   A.   Mandatory Choice of Law Rules Will Raise a Substantial Federal Question. .........................................................................................................7

   B.   Plaintiffs' Worldwide Authorship Claims Depend on U.S. Law. ........8

**CONCLUSION** ..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) ..................................................................................................................1

*Cts Boquillon Liger-Belair v. SNC Hachette Collections et al.*,
  (Paris Court of Appeal, Sept. 8, 2015, No. 14/06060) ..............................................................2

*Folkes v. Greensleeves Publishing Ltd.*,
  1997 WL 1918053 (Ont. Gen. Div. 1997) ................................................................................4

*Gunn v. Minton*,
  568 U.S. 251 (2013) .......................................................................................................7, 9, 10

*Hurtado v. Superior Court*,
  11 Cal.3d 574 (1974)..................................................................................................................8

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
  153 F.3d 82 (2d Cir. 1998)..............................................................................................1, 2, 7, 8

*Jean Lamore v Universal City et al.*
  (Court of Cassation, Jan. 30, 2007, No. 03-12.354)...............................................................2, 5

*JustMed, Inc. v. Byce*,
  600 F.3d 1118 (9th Cir. 2010).........................................................................................7, 9, 10

*M.X. v. ABC News*
  (Court of Cassation, April 10, 2013, Nos. 11-12.508-510).......................................................2

*Scania v. Diesel Technic de l'Ouest*
  (Court of Cassation, April 7, 1998, No. 96-13.712)..................................................................2

*Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*,
  336 F.3d 982 (9th Cir. 2003)......................................................................................................9

*T.B. Harms Co. v. Eliscu*,
  339 F.2d 823 (2d Cir. 1964).......................................................................................................7

*Washington Mutual Bank v. Superior Court*,
  24 Cal. 4th 906 (2001)................................................................................................................8

### STATUTES

17 U.S.C.
  § 201.............................................................................................................................................7
  § 201(b) .......................................................................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Canada Copyright Act §13(3) ............................................................................................................. 9

France Intellectual Property Code, Article L113-7 ............................................................................ 9

New Zealand Private International Law (Choice of Law in Tort) Act 2017 § 8(1) ........................... 3

Spanish Law on Intellectual Property, Article 5(1) .......................................................................... 10

U.K. Copyright, Designs and Patents Act 1988
    § 9 ................................................................................................................................................ 9
    § 11 .............................................................................................................................................. 9

U.K. Private International Law (Miscellaneous Provisions) Act 1995, Pt. III .................................. 3

**OTHER AUTHORITIES**

1 Copyright Throughout the World (2023)
    § 16:15 ....................................................................................................................................... 10
    § 20A:52 ..................................................................................................................................... 3

4 Eckstrom's Licensing in For. & Dom. Ops. § 27:89 (2023) .......................................................... 10

1 International Copyright Law and Practice (2022)
    (Canada) § 4[1][a] ..................................................................................................................... 9
    (France) § 4[1][a] ...................................................................................................................... 9

7 Patry on Copyright (2023) § 25:46 ............................................................................................. 2, 4

Berne Convention for the Protection of Literary and Artistic Works
    Article 2 ..................................................................................................................................... 5
    Article 14*bis* ......................................................................................................................... 5, 6

Elizabeth Adeney, *The Mask Of The Author – Anonymity and Pseudonymity in Two Common Law Countries*, 31 IIC Int. Rev. Intellect. Prop. Compet. Law 913 (2000) ................. 5

Jane C. Ginsburg & Sam Ricketson, International Copyright and Neighbouring Rights: The Berne Convention and Beyond (3d ed. 2022) ....................................................... 4, 6

Toshiyuki Kono, ed., Intellectual Property and Private International Law: Comparative Perspectives (2012) ................................................................................................ 5

Jan Bernd Nordemann, *The U.S. "Work-for-Hire" Doctrine Before German Courts - Rejection and Reception*, 53 J. Copyright Soc'y U.S.A. 603 (2006) ......................................... 5

Eva Steiner, French Law: A Comparative Approach (2018) ............................................................. 3

# INTRODUCTION

If this copyright case were to be filed outside of the United States, courts in numerous countries—consistent with U.S. law as set forth in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90-91 (2d Cir. 1998)—would apply the law of the United States (i.e., the country of origin or *lex originis*) to determine copyright ownership. This principle applies here notwithstanding the Berne Convention's reference to cinematographic works. Because resolution of this case requires application of the work-for-hire doctrine of the Copyright Act in those countries applying *lex originis*, this case raises a substantial federal question.

Federal-question jurisdiction exists for a second, independent reason irrespective of whether any of the countries listed in the Complaint apply *lex originis* as to copyright ownership (and as noted, some unquestionably do). This lawsuit involves parties who are U.S citizens; works created in the U.S; and allegations of copyright infringement that occurred substantially (or at least primarily) in the U.S. Significantly, an ***American*** court will ultimately decide this case. So, this lawsuit remains a U.S. case, subject to mandatory U.S. choice-of-law principles, whether federal or state-based, and a concomitant analysis of significant relationships and governmental interests. As a matter of federal common law, the U.S. has the most significant relationship to the works alleged in the Complaint. And even viewed under state law, a substantial governmental interest of the United States favors applying the U.S. Copyright Act to determine initial ownership. This is so especially where, as here, a complaint alleges violation of foreign copyright law involving U.S.-created works falling under the U.S. work-for-made-for-hire doctrine. *See* Opposition ("Opp.") at 12 n. 4. Indeed, as recognized in *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 749–50 (1989), in the U.S., consistent application of the work-made-for-hire doctrine is critical to a stable copyright regime.

For the reasons discussed below and in the Opposition, the Motion to Remand should be denied.

# ARGUMENT

## I. A NUMBER OF COUNTRIES WOULD APPLY U.S. LAW TO DETERMINE COPYRIGHT OWNERSHIP

As discussed in the Opposition, beginning as early as *Itar-Tass*, 153 F.3d 82, cases in U.S. courts apply *lex originis*—that is, the law of the country of origin—to determine copyright ownership. Opp. 10. As one noted commentator has observed, *Itar-Tass* is "consistent with court decisions in decisions in other . . . countries, legislation in foreign countries, and numerous commentators." 7 Patry on Copyright § 25:46 (2023).

*France.* Judicial holdings in France frequently apply the law of a work's country of origin to determine copyright ownership. As pointed out in the Opposition, a 2015 appellate case determined ownership of a drawing originally licensed for a 1942 *Tintin* cartoon by applying Belgian law. *See* Dkt. 26-2 at Exs. 1-2 (*Cts Boquillon Liger-Belair v. SNC Hachette Collections et al.* [Paris Court of Appeal, Sept. 8, 2015, No. 14/06060]). In *Scania v. Diesel Technic de l'Ouest* (Court of Cassation, April 7, 1998, No. 96-13.712), France's highest court held that a lower court properly applied Swedish law to determine the initial ownership of copyrights in diagrams as between a Swedish company and its employees. Suppl. Declaration of James Berkley ("Berkley Suppl. Decl."), ¶¶ 2-3 & Exs. 23-24. In *Jean Lamore v Universal City et al.* (Court of Cassation, Jan. 30, 2007, No. 03-12.354), the same court affirmed application of American law to the ***entire dispute*** in connection with copyright claims brought over the international release of the American-made motion picture *Waterworld.* Berkley Suppl. Decl.*,* ¶¶ 3-5 & Exs. 25-26. As a rationale, the Court pointed to the fact that even if alleged infringements occurred in France, the "the film had been conceived, produced and presented in the United States." *Id.*, Ex. 26 at p. 2. *See also* 7 Patry on Copyright § 25:46 n. 3 (citing Cass. 1re Civ., Dec. 22, 1959, the *Rideau de fer* ("Iron Curtain") case, in which the Court of Cassation "appl[ied] Russian law on ownership to infringement that occurred in France"). Here, as with the work at issue in *Jean Lamore*, the *Tiger King* Documentary was conceived, produced, and presented in the United States. In a case like this, French courts have applied *lex originis* and would thus consider the U.S. work-made-for-hire issue.[1]

---

[1] *M.X. v. ABC News* (Court of Cassation, April 10, 2013, Nos. 11-12.508-510) does not mandate a

***Italy.*** "The first right owner of copyright [in Italy] . . . is determined on the basis of the law applicable in the country of origin of the work." 1 Copyright Throughout the World § 20A:52 (2023).

***United Kingdom and New Zealand.*** In common law countries like the United Kingdom and New Zealand, choice of law statutes for torts provide rules that favor application of foreign law to copyright ownership in a context such as this. Those statutes provide that "[t]he general rule is that the applicable law is the law of the country in ***which the events constituting the tort [or delict] in question occur.***" *See* Berkley Suppl. Decl., ¶ 6 & Ex. 27 (U.K. Private International Law [Miscellaneous Provisions] Act of 1995, Pt. III at § 11(1)); *id.* ¶ 7 & Ex. 28 (New Zealand Private International Law [Choice of Law in Tort] Act 2017 at § 8(1)) (emphasis added). Here, of course, Plaintiffs allege "substantially all" events occurred in the U.S. and elsewhere in the Complaint concede that significant alleged infringement took place in the U.S. *See* Complaint at ¶¶ 6, 12-14.

Moreover, these choice of law rules further provide that if "elements of [the] events occur in different countries," the applicable law depends upon the cause of action. For a cause arising from either physical or mental injury, it is "the law of the country where the individual was when he or she sustained the injury;" for one "in respect of damage to property," it is "the law of the country where the property was when it was damaged;" and in all other cases, ***"it is the law of the country in which the most significant element or elements of [the] events occurred."*** Berkley Suppl. Decl. Ex. 27 at § 11(2), Ex. 28 at § 8(2) (emphasis added). Beyond this, courts may in their discretion determine that "that in all the circumstances it is substantially more appropriate for the law of another country . . . to be the applicable law," based on weighing a non-exhaustive set of factors. *Id.* at § 9; *see also id.,* Ex. 27 at § 12. Applying this rule to Plaintiffs' Complaint, the

---

contrary result. In that case, plaintiffs were longtime employees of ABC News who resided in France and worked in ABC's Paris office. After being laid off from their jobs, they challenged their dismissal in court and claimed ownership in reports broadcast on international television despite ABC's work-made-for-hire argument. The Court applied French law to determine ownership. Clearly, the facts of *ABC News* contrast sharply with those in this case, in which Plaintiffs never resided in the foreign countries identified in the Complaint. In any case, unlike American law, decisions of the French courts are not precedential. *See, e.g.,* Eva Steiner, French Law: A Comparative Approach 68 (2018) ("In France, judicial decisions, even when pronounced by superior courts, are not binding precedents that must be followed by judges.").

appropriate law to determine ownership would be U.S. law, and even the balancing exercise would require interpretation of U.S. law.

*Canada.* In *Folkes v. Greensleeves Publishing Ltd.*, 1997 WL 1918053 (Ont. Gen. Div. 1997), the court declined to apply Canadian law to ownership of a song composed in 1958 in Jamaica (at that time a British colony), and instead applied the law of England. The Court agreed that the plaintiff's claim would "stand or fall" on the question of copyright ownership, *id.* at ¶ 16, but nonetheless found that a prior ruling from an English High Court militated in favor of deference to the English holding, dictated by "[p]rinciples of comity and the need to avoid multiple proceedings yielding in inconsistent findings." *Id.* at ¶ 17. While the English proceedings involved an assignment, the net result was to apply *lex originis*. William Patry accordingly cites *Folkes* as a "Canadian decision applying [foreign] law on copyright ownership on the ground of comity." 7 Patry on Copyright § 25:46 n. 7. Here too, there is a prior judgment outside of Canada that would favor the same result.

***Germany and the Contractual Relations Approach.*** In Germany, a court faced with a U.S. work-made-for-hire scenario should interpret the U.S. Copyright Act and translate it into an approximate set of contractual relations. As German scholar Eugen Ulmer notes:

> [I]f for example a work made for hire in the USA is to be exploited in Germany, the principle is that the copyright belongs to the employer. In Germany, however, the acquisition of copyright can only be interpreted as an agreement [as opposed to occurring automatically by operation of law]. It is therefore effective only within the limits in which a grant of rights of use is permissible according to German law….[2]

As paraphrased recently, "[i]n other words, the US law characterization of the employer as initial copyright owner gives it standing to assert copyright ownership in Germany, but German law defines the scope of the rights that the employer may enjoy in Germany."[3] Hence in a German case involving a song prepared for a film in the U.S. by the musician and composer Bert Kaempfert, the

---

[2] Eugen Ulmer, Intellectual Property Rights and the Conflict of Laws 39 (1978) (quoted in Ginsburg & Ricketson, *infra* n. 3).

[3] Jane C. Ginsburg & Sam Ricketson, International Copyright and Neighbouring Rights: The Berne Convention and Beyond 1346 (3d ed. 2022).

court "appl[ied] U.S. contract law, in particular the work-for-hire doctrine, to the case."[4] Recent German commentary confirms this approach. *See* Berkley Suppl. Decl., ¶¶ 8-10 & Exs. 29-31.[5]

In sum, courts in numerous countries would look to U.S. law to determine copyright ownership, therefore squarely raising the substantial federal question regarding work-made-for-hire.

***The Berne Convention and Cinematographic Works.*** Article 14*bis* of the Berne Convention, pertaining to "cinematographic works" is not to the contrary. In particular, Article 14*bis*(2)(a), states that "Ownership of copyright in a cinematographic work shall be a matter for legislation in the country where protection is claimed."[6] But read in context, this provision does not obviate the cases applying *lex originis*.

First, as in the United States, the Berne Convention is not self-executing in countries such as Canada, the U.K., or New Zealand.[7] Second, French courts have ignored Article 14*bis*(2)(a) and applied U.S. law in determining ownership of a U.S.-made cinematographic work. *See* France's 2007 *Waterworld* case (*Lamore v. Universal City*), cited above. Third, the Berne Convention does not define "cinematographic work," and refers elsewhere (in Article 2) to "cinematographic works to which are assimilated works expressed by a process analogous to cinematography." While

---

[4] Jan Bernd Nordemann, *The U.S. "Work-for-Hire" Doctrine Before German Courts - Rejection and Reception*, 53 J. Copyright Soc'y U.S.A. 603, 612-13 (2006) (citing District Court Munich I, ref. No. 7 O 17215/85, decision of November 26, 1985, p. 10 - unpublished).

[5] A related approach would apply the law applicable to the contractual relationship. A 2012 survey of 20 countries observed that "[t]he issue of ownership of IP products created on the basis of a pre-existing contractual relationship is usually considered an exception to the widely accepted principle that the law of the protecting country … should be applicable." That study provided the example of the European Union "Rome I" Regulation on contractual relations, which looks first to the law chosen by the parties or "where the employee habitually carries out his work." Toshiyuki Kono, ed., Intellectual Property and Private International Law: Comparative Perspectives 182 (2012).

[6] When claims are brought in a U.S. forum, the "country where protection is claimed" is arguably the United States.

[7] *See, e.g.,* Elizabeth Adeney, *The Mask Of The Author – Anonymity and Pseudonymity in Two Common Law Countries*, 31 IIC Int. Rev. Intellect. Prop. Compet. Law 913, 939 n. 94 (2000) ("[S]ince the Berne Convention is not self-executing in the United Kingdom, foreign authors have only the domestic legislation of that country to rely on."). *See also* Berkley Suppl. Decl., ¶¶ 11-13 & Exs. 32-34 (other countries).

various interpretations have been proposed, the provisions of Article 14*bis* have been criticized "as devoid of practically any real substance."[8]

Yet even a purely localist application of Article 14*bis*(2)(a) does not excise U.S. Copyright law from issues of ownership and standing. Whatever its lack of substance or judicial application, Article 14*bis*(2)(a) is part of a complex system of presumptions that, at most, put certain matters in the hands of a "protecting" country while also referring ***back to the law of the country of origin***. After subsection (2)(a), Article 14*bis* continues:

> (b) However, in the countries of the Union which, by legislation, include among the owners of copyright in a cinematographic work authors who have brought contributions to the making of the work, such authors, if they have undertaken to bring such contributions, may not, in the absence of any contrary or special stipulation, object to the reproduction, distribution, public performance, . . . or any other communication to the public . . . of the work.
>
> (c) The question whether or not the form of the undertaking referred to above should . . . be in a written agreement or a written act of the same effect ***shall be a matter for the legislation of the country where the maker of the cinematographic work has his headquarters or habitual residence***…. [emphasis added]

In a nutshell, Article 14*bis* creates a rebuttable presumption that an individual who has "undertaken to bring … contributions" to a cinematographic work and is therefore deemed an author in another country ***may not object to the work's exploitation***, and instructs that a court ***look to the law of the work's home country*** to determine what may suffice to rebut the presumption.[9] Here, there is no dispute that the relevant "headquarters or habitual residence" of the Videos' ultimate "maker"— artfully left unspecified in Plaintiffs' Complaint— was in the United States,

---

[8] Ginsburg & Ricketson, *supra,* 394.

[9] Article 14*bis* contains two qualifications of this presumption, but neither is relevant here. First, a concluding part of 14*bis*(2)(b) provides that certain contributors, including a work's "primary director," can be treated as exempt from the presumption, but such exemption requires a nation to file a declaration with WIPO's Director General. To date, only India has filed such a declaration, and in any event the Complaint does not allege Plaintiffs were "primary directors" of the Videos. *See* Complaint, ¶¶ 7-8; https://www.wipo.int/treaties/en/notifications/berne/treaty_berne_108.html. Second, the non-origin country may itself decide to require that any "contrary stipulation" must be in writing, Article 14*bis*(3), but that too requires a special filing, which to date has only been done by Portugal. *See* https://www.wipo.int/treaties/en/notifications/berne/treaty_berne_116.html. *See* Ginsburg & Ricketson, *supra,* at 396-97.

and assessment of whether a writing was required would be governed by the work-for-hire provisions of the Copyright Act, 17 U.S.C. § 201. This recourse to U.S. law would be a prerequisite for any viable claim of ownership under Article 14*bis*.

## II. EVEN ASSUMING ARGUENDO THAT *NO* FOREIGN COURT WOULD APPLY U.S. LAW TO OWNERSHIP (AND SOME CLEARLY WOULD), A FEDERAL QUESTION AS TO OWNERSHIP WOULD STILL EXIST

Because a number of foreign countries identified in the Complaint apply the *lex originis* principle, the Complaint raises substantial federal questions. Of course, an American court will decide this case, which involves U.S. parties, works created in the U.S., and allegedly the existence of significant infringing acts in the U.S. The decision will therefore affect the rights of U.S. citizens and the ownership U.S. works. As discussed above, if posed in the eleven foreign jurisdictions named, the Complaint would "require[] an interpretation of the [U.S.] Copyright Act" under multiple approaches, whether based on foreign judicial decisions, choice of law statutes, or direct application of the Berne Convention, including Article 14*bis*. This gives rise to a substantial federal question that must be addressed in federal court. *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (quoting *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*, 336 F.3d 982, 986 (9th Cir. 2003) (in turn summarizing *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964)). By their very nature, the ownership issues requiring application of U.S. law are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the federal-state balance approved by Congress," and thus meet the general test set out in *Grable* and *Gunn*. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013).

But beyond this, a federal question would exist even assuming *arguendo* that no foreign country would apply *lex originis*. Moreover, Plaintiffs' Complaint hinges on an ownership theory that functions ***only*** under U.S. law.

### A. *Mandatory Choice of Law Rules Will Raise a Substantial Federal Question.*

The court deciding this case, be it federal or state, will not merely sit as a surrogate foreign court. Rather, the court must first apply forum-appropriate choice-of-law principles to determine how to decide copyright ownership. The relevant choice of law test here is the ***federal common law of copyright conflicts***. And as articulated in *Itar-Tass*, in such a situation federal common law

necessarily requires consideration of *lex originis* (i.e., U.S. Copyright Act) to determine ownership of works made for hire.

Even in a state court forum, the choice of law analysis itself would raise substantial federal questions on par with *Itar-Tass*. "[N]ormally, even in cases involving foreign elements, the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum." *Hurtado v. Superior Court*, 11 Cal.3d 574, 581 (1974). The consensus in a U.S. forum, following *Itar-Tass* and its progeny, is to apply the law of the country of origin to determine initial ownership. Any consideration of how foreign courts would determine ownership occurs within a framework of this larger choice of law issue. Unless federal-question jurisdiction is presumed, the applicable standard is California's three-step "governmental interest analysis," entailing comparison of foreign law with the U.S. Copyright Act and accompanying federal interests. *See* Opp. at 12 n. 4. Such analysis is mandatory whether a litigation "arises out of contract or tort," and "a ***separate conflict of laws inquiry must be made with respect to each issue in the case***." *Washington Mutual Bank v. Superior Court,* 24 Cal. 4th 906, 920 (2001) (emphasis added). This naturally includes ownership.

Not only is this analysis mandatory, but it is also supported by critical policy underlying the Copyright Act. Chaos would ensue if U.S. courts were to apply foreign law without weighing the balance of interests at stake, especially in the area of international work-for-hire issues. These interests are overwhelmingly federal. Moreover, as *Itar-Tass* points out, a body of ***federal principles*** exists to guide choice of law in copyright matters:

> We start our analysis with the Copyrights Act itself, which contains no provision relevant to the pending case concerning conflicts issues. ***We therefore fill the interstices of the Act by developing federal common law on the conflicts issue***…. In doing so, we are entitled to consider and apply principles of private international law, which are "part of our law."

*Itar-Tass,* 153 F.3d at 90 (quoting *Maxwell Communication Corp. v. Societe Generale*, 93 F.3d 1036, 1047 (2d Cir. 1996)).

**B.     Plaintiffs' Worldwide Authorship Claims Depend on U.S. Law.**

As discussed in the Opposition, there are at least two separate "embedded federal issues"

regarding work-made-for-hire and ownership. First, of course, is whether Plaintiffs own seven of the eight Videos or rather whether those videos were created within the scope of Mr. Sepi's employment at the Park (as the Oklahoma Court found). For the reasons discussed, and under *JustMed, Scholastic*, and *Gunn,* this raises a necessary federal question because it raises both the work-made-for-hire doctrine and federal common-law choice of law determinations.

But a second ownership issue establishes that the Complaint raises a federal question: Plaintiff Whyte Monkee itself claims to be a "legal *author*" of the copyrighted works, such that it is vested with moral and economic rights in each of the countries at issue. *See* Complaint at ¶¶ 8, 21-23, 29-31, 37-39, 44-46, 52-54 *et seq*. And the sole way Whyte Monkee can be an author is as an employer for hire. *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared *is considered the author* for purposes of this title….") (emphasis added). However, the overwhelming majority of countries identified in the Complaint do not vest *authorship* in a purported business entity like Whyte Monkee—even countries that recognize a version of the work-made-for hire doctrine. These countries include:

- *Canada*. *See* Canada Copyright Act §13(3) (Berkley Suppl. Decl., ¶ 14 & Ex. 35); International Copyright Law and Practice (Canada) § 4[1][a] (2022) (an author may be "[i]n principle . . . any *human being* who creates the work at issue," but an entity that oversees its creation, while it may be an owner, is *not* an author) (emphasis added).

- *United Kingdom*. *See* U.K. Copyright, Designs and Patents Act 1988 §§ 9, 11 (Berkley Suppl. Decl., ¶ 15 & Ex. 36) (the term "author" means "the person who creates [the work]," and where a work is "made by an employee in the course of … employment," the employer becomes "first owner" of the copyright but not an author).

- *Fran**ce*. *See* 1 International Copyright Law and Practice (France) § 4[1][a] (2022) ("As a matter of principle, in French copyright law, only the natural persons who create works may be deemed to be authors.").[10]

---

[10] *See also* French Intellectual Property Code (Berkley Suppl. Decl., ¶¶ 16-17 & Exs. 37-38) at Article L113-7 ("Authorship of an audiovisual work shall belong to the natural person or persons who have carried out the intellectual creation of the work.").

**SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO REMAND**

- ***Germany.*** *See* 1 Copyright Throughout the World §16:15 (2023) (In Germany, "the author of a work is always the *natural person* who created the work . . . while legal entities, machines, or animals can never be authors.") (emphasis in original).
- ***Spain***. *See* Spanish Law on Intellectual Property, Article 5(1) (Berkley Suppl. Decl., ¶¶ 18-19 & Exs. 39-40) ("The natural person who creates any literary, artistic, or scientific work shall be considered the author thereof.").
- ***Mexico.*** *See* 4 Eckstrom's Licensing in For. & Dom. Ops. § 27:89 (Mexico) (2023) ("The author is the natural person who has created a literary or artistic work.").

By alleging that Whyte Monkee is author of the copyrighted works worldwide —possible only under the Copyright Act of the United States—the Complaint necessarily alleges that ***U.S. law*** applies to the ownership issues, thus giving rise to a substantial, and disputed, federal question on the work-made-for-hire issue. That is, if Whyte Monkee can have ownership rights in the foreign countries identified in the Complaint by virtue of being an author pursuant to U.S. work-for-hire law, *a fortiori* so can Sepi's employer, the Park. At the very least, on choice of law alone, the "embedded federal issues" as to ownership are necessary, disputed, substantial, and properly addressed at the federal level, meeting *Grable* and *Gunn*, and are such that "federal principles should control the claims." *JustMed,* 600 F.3d at 1124.

## CONCLUSION

For the foregoing additional reasons, Plaintiffs' Motion to Remand should be denied.

DATED: January 12, 2024             RESPECTFULLY SUBMITTED,

ROBERT H. ROTSTEIN
EMILY F. EVITT
JAMES D. BERKLEY
MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Robert H. Rotstein
    Robert H. Rotstein
    Attorneys for Defendant Netflix, Inc.