UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHYTE MONKEE PRODUCTIONS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | Case No. 23-cv-03438-PCP<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 25 |

This a copyright dispute involving the Netflix series *Tiger King*. Plaintiffs Timothy Sepi and Whyte Monkee Productions LLC allege that Netflix, Inc. displayed unauthorized derivatives of several of their copyrighted videos in violation of the copyright laws of several foreign nations. Netflix removed the action from state court and plaintiffs now move to remand, contending that this Court lacks federal question jurisdiction and that Netflix, a forum defendant, is ineligible to remove this case on the basis of diversity jurisdiction. Because at least one of plaintiffs' claims raises a substantial and disputed question of federal copyright law, the motion to remand is denied.

**I.    Background**

Mr. Sepi is a creative professional who controls a film production company called Whyte Monkey Productions, LLC. Mr. Sepi claims that over the last ten years, he personally created several cinematographic works, either on his own or under the auspices of Whyte Monkee. According to the complaint, several of these works included authorship designations indicating that Whyte Monkee LLC was the author. The complaint alleges that Netflix worked with another company to produce "cuts" of these works that were used in its reality series *Tiger King*, and that Netflix thereafter posted on its streaming platform unauthorized works that were derived from plaintiffs' copyrighted works.

In late 2020, Mr. Sepi and Whyte Monkee filed an action against Netflix in the United States District Court for the Western District of Oklahoma asserting claims involving the same cinematographic works. The claims in that litigation all arose directly under the federal Copyright Act. In April 2022, the Oklahoma district court granted summary judgment in favor of Netflix, concluding that plaintiffs did not own seven of the eight videos at issue and that the use of the eighth video constituted a fair use. *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 601 F. Supp. 3d 1117, 1123 (W.D. Okla. 2022). On appeal, the Tenth Circuit affirmed the district court's grant of summary judgment with respect to the seven unowned videos but reversed with respect to the eighth video and remanded for further consideration of Netflix's fair use defense. *Whyte Monkee Prods., LLC v. Netflix, Inc.*, ⸺ F.4th ⸺, 2024 WL 1291909, at *1 (10th Cir. Mar. 27, 2024).[1]

In March 2023, nearly a year after summary judgment was granted to Netflix in the Oklahoma litigation, plaintiffs filed this action in California state court alleging that Netflix publicly performed, displayed, and distributed unauthorized derivatives of their copyrighted works in Australia, Great Britain, Canada, France, Germany, Italy, Japan, South Korea, New Zealand, and Spain. Plaintiffs asserted copyright claims under the laws of these countries but did not assert U.S. copyright claims.

In July 2023, before Netflix had been served in the California state court action, Netflix removed the case to federal court, asserting that this Court has both federal question and diversity jurisdiction over plaintiffs' lawsuit. Plaintiffs timely moved to remand this matter to state court.

**II.     Legal Standards**

Federal district courts are courts of limited jurisdiction. 28 U.S.C. § 1331 provides for federal question jurisdiction, authorizing "jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1332 provides for diversity jurisdiction, authorizing "jurisdiction of all civil actions where the matter in controversy exceeds … $75,000 … and is between … citizens of different States."

---

[1] The Court takes judicial notice of these proceedings for their relevance to this case, but does not take notice of any underlying facts set forth in the cited opinions.

Cases filed in state court over which a federal court would have had original jurisdiction can be removed to federal court under 28 U.S.C. § 1441(a). But Section 1441(b) provides an exception, known as the "forum defendant" rule, which specifies that an "action otherwise removable solely on the basis of [diversity] jurisdiction … may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

28 U.S.C. § 1447 sets out certain procedures that federal district courts must follow after removal. In particular, it directs that if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand. The presumption against removal means that the defendant always has the burden of establishing that removal is proper." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (cleaned up).

### III.    Analysis

To establish that removal to this Court was proper, Netflix must show that this Court has either federal question or diversity jurisdiction over this action.

#### A.    Federal Question Jurisdiction

"The general rule, referred to as the 'well-pleaded complaint rule,' is that a civil action arises under federal law … when a federal question appears on the face of the complaint." *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020). Because "a case may not be removed to federal court on the basis of a federal defense," a "plaintiff can generally avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 904 (cleaned up). But there are exceptions. One is where "a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Another "allows removal where federal law completely preempts a plaintiff's state-law claim." *Id.* (cleaned up). For federal Copyright Act claims, the Ninth Circuit has concluded that federal question jurisdiction exists if "(1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010).

3

Plaintiffs' complaint does not directly state a federal claim, nor does it seek a Copyright Act remedy. To establish federal question jurisdiction, then, plaintiffs' foreign law claims must necessarily raise a substantial and disputed federal issue appropriate for resolution in this Court. *City of Oakland*, 969 F.3d at 904. Such a federal issue is present here if plaintiffs' claims will require an interpretation and application of the Copyright Act. *See JustMed*, 600 F.3d at 1124.

### 1. This Court's Choice of Law Analysis Will Require Consideration of Federal Law and May Result in the Application of Federal Law to Plaintiffs' Claims.

In this lawsuit, plaintiffs assert claims under foreign law, rather than under federal law or the law of the state where this Court sits. As a result, before considering the merits of plaintiffs' claims, the Court will be required to undertake a choice of law analysis to determine what law applies.

Absent a federal law claim, this Court applies California's choice of law rules. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal district court must apply the choice of law rules of the state where it sits). California determines the rule of decision through a "governmental interest analysis":

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006) (cleaned up).

The governmental interest analysis in this case will require comparing each foreign law plaintiffs invoke against California law, which "includes federal law." *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004). Here, the relevant California law is *only* federal law because the Copyright Act explicitly preempts state copyright law. 17 U.S.C. § 301.

Thus, to determine whether to apply the asserted foreign copyright laws or the federal Copyright Act (which is also California's law), the Court will have to (1) evaluate whether there are differences between the Copyright Act and the asserted foreign copyright laws, (2) examine each jurisdiction's interests in the application of its laws, and (3) weigh these competing interests.

This governmental interest analysis alone may raise a federal question, although it is not clear whether any federal issue stemming from the Copyright Act would be substantial and actually disputed. If this analysis were to result in a determination that the Copyright Act governs plaintiffs' claims, that would undoubtedly provide a substantial and disputed federal question sufficient to establish jurisdiction under 28 U.S.C. § 1331.

### 2. Plaintiffs' Foreign Law Claims Raise a Substantial Federal Question.

Even if this Court's choice of law analysis would not itself create a substantial and disputed federal issue, and even if that analysis would result in application of foreign law rather than the Copyright Act to plaintiffs' claims, federal question jurisdiction would still exist here if a substantial and disputed federal issue were embedded in plaintiffs' foreign law claims. The Court concludes that such an issue is present here because one or more of plaintiffs' claims will require applying Copyright Act ownership principles to determine whether each of the works at issue is owned by Mr. Sepi or by Whyte Monkee—a conflict necessarily raised by plaintiffs' complaint.

Under each of the foreign laws at issue, an essential element of a copyright claim is copyright ownership. But a simple assertion of ownership does not on its own establish federal question jurisdiction, even if that ownership was established pursuant to federal law. *See Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983); *Cordero v. McGonigle*, No. 13-cv-0198 2013 U.S. Dist. LEXIS 182243, at *9-10 (C.D. Cal. Jan. 3, 2014) ("The instant case is distinguishable from *JustMed*, as the work-for-hire doctrine does not need to be applied. This is not a case where the plaintiff has pled that he is the owner of a copyright because of the work-for-hire doctrine. Rather, Cordero's complaint only states that he was the author…."). Where ownership depends on an application of the Copyright Act's work-for-hire doctrine, however, that federal issue is sufficient to establish federal question jurisdiction under binding Ninth Circuit precedent. *JustMed*, 600 F.3d at 1124–25 ("Because ownership normally vests in the author of a work,

5

1  JustMed would have ownership only under the Copyright Act's work-for-hire doctrine …. Thus,
2  application of the work-for-hire doctrine is central to this appeal.").

3        The question here is thus whether any of plaintiffs' foreign-law claims require applying the Copyright Act's work-for-hire provisions. The work-for-hire doctrine is potentially relevant because plaintiffs claim that Mr. Sepi created some of the works at issue "on his own" but created others "under the auspices" of Whyte Monkee and that some of the works "included authorship designations indicating that Whyte Monkee … was the author." Compl. ¶¶ 8, 10. Further, each of plaintiffs' foreign claims asserts that *both* "plaintiffs are the legal authors of their … works." *E.g.*, Compl. ¶ 21. Because it is not legally possible that Mr. Sepi and Whyte Monkee are both legal authors of the works at issue (they do not, for example, purport to be co-authors), any court considering plaintiffs' claims will necessarily have to determine *which* of the two plaintiffs is the legal author and owner of each copyrighted work.

      Accordingly, even if plaintiffs are pursuing this lawsuit against Netflix cooperatively, and even if Netflix has no reason to dispute ownership as between the two plaintiffs, the authorship and ownership of each of the works present a necessarily disputed issue that is apparent on the face of the complaint. The question then becomes how the foreign jurisdictions whose laws plaintiffs have invoked would determine authorship and ownership of each work. If any of those jurisdictions would apply U.S. law rather than local law to determine copyright ownership, then the question of ownership as between Mr. Sepi and Whyte Monkee would require application of the Copyright Act's work-for-hire provisions, since Whyte Monkee, like JustMed, "would have ownership *only* under the Copyright Act's work-for-hire doctrine." *JustMed*, 600 F.3d at 1124 (emphasis added).

      At the Court's request, Netflix provided nearly a hundred pages of supplemental briefing and foreign case law and statutes showing that at least some of the countries under whose copyright laws plaintiffs are pursuing claims determine copyright ownership using the law of the country where the work originated. For example, Netflix points to several French cases applying the law of the country of origin to determine ownership. *See, e.g.*, Cour d'appel [CA] [regional court of appeal] Paris, Feb. 23, 2021, 19/09059 ("[W]ith regard to the existence and ownership of

1  copyright, … the Belgian law … on copyright is applicable to the dispute.") (translation); Cour de

2  cassation [Cass.] [supreme court for judicial matters] 1e civ., Apr. 7 1998, 96-13.712 (rejecting

3  appeal where lower court applied "Swedish law … for the definition of copyright ownership")

4  (translation).[2]

5  Based on these authorities, it is apparent that even if foreign law applies to all of plaintiffs'

6  claims, the Court will have to apply U.S. federal law to determine copyright ownership with

7  respect to at least some of those claims. And under the federal law of copyright ownership, Whyte

8  Monkee can only claim authorship (and thereby ownership) through an application of the work-

9  for-hire provisions of the Copyright Act. *See* 17 U.S.C. § 201(b). This application of the

10 Copyright Act's work-for-hire doctrine is thus a central federal issue raised by plaintiffs'

11 complaint that is sufficient to establish the Court's federal question jurisdiction. *See JustMed*, 600

12 F.3d at 1124. To the extent any of plaintiffs' claims do not raise a federal question, the Court can

13 properly exercise supplemental jurisdiction over those claims since they are part of the same case

14 or controversy. *See* 28 U.S.C. § 1367.

### B.  Diversity Jurisdiction

Netflix separately argues that this Court has diversity jurisdiction over this action. The parties do not dispute that they are completely diverse, although they do contest the amount in controversy. Plaintiffs also argue that Netflix's removal was improper under the forum-defendant rule, which provides that an action otherwise removable only on the basis of jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). It is undisputed that Netflix is a citizen of California and therefore subject to the "forum defendant" exception to removal.

Netflix argues that removal was proper because it removed the case *before* it was "properly joined and served." The Ninth Circuit has not yet decided whether such "snap" removals are permissible, and district courts are divided. *See Casola v. Dexcom, Inc.*, ––– F.4th –––, 2024 WL

---

[2] Common law countries like the United Kingdom and New Zealand would at the very least apply choice-of-law tests that, like California's, would require considering U.S. law. *See, e.g.*, Private International Law (Miscellaneous Provisions) Act 1995 § 11(2) (U.K.); Private International Law (Choice of Law in Tort) Act 2017 s 8(2) (N.Z.).

7

1547021, at *2 n.1 (9th Cir. Apr. 10, 2024). The Court is skeptical that the removal statute should be construed to permit snap removal. *Compare* 28 U.S.C. § 1441(b)(2) (considering the "parties in interest properly joined and served as defendants" without expressly specifying whether proper joinder and service must already have occurred) *with* 28 U.S.C. § 1446(b)(2)(A) (requiring consent to removal from "all defendants who *have been* properly joined and served") (emphasis added). The Court need not decide that issue, however, because the Court has federal question and supplemental jurisdiction over plaintiffs' claims.

## IV. Conclusion

Because this case raises a question of federal law, the Court has subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiffs' motion to remand is denied.

Pursuant to the parties' stipulation, Dkt. No. 12, Netflix's deadline to respond to the complaint is May 17, 2024. Plaintiffs' deadline to respond to any motion to dismiss or forum non conveniens motion is June 14, 2024, and Netflix's reply deadline is July 5, 2024. The Initial Case Management Conference is reset to October 3, 2024.

**IT IS SO ORDERED.**

Dated: April 16, 2024

P. Casey Pitts
United States District Judge