UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHYTE MONKEE PRODUCTIONS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | Case No. 23-cv-03438-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS** |

This case involves two different lawsuits in two different courts, each arising from the same series of events surrounding Netflix's production of the documentary series *Tiger King*. In September 2020, plaintiffs Whyte Monkee Productions LLC and Timothy Sepi (collectively, "plaintiffs") sued Netflix, Inc. ("Netflix") and Royal Goode Productions in the Western District of Oklahoma alleging that Netflix displayed unauthorized derivatives of eight cinematographic works owned by plaintiffs in violation of the federal Copyright Act. No. 5:20-cv-00933-D (W.D. Okla.). Plaintiffs filed their second amended complaint in the Oklahoma litigation on December 13, 2021. *Id.* at Dkt. No. 40. The Oklahoma district court granted summary judgment to Netflix with respect to all eight videos, finding that plaintiffs did not own seven of the videos and that Netflix's use of the eighth video qualified as fair use. *See Whyte Monkee Prods., LLC v. Netflix, Inc.*, 601 F. Supp. 3d 1117 (W.D. Okla. 2022). The court entered final judgment in accordance with its ruling on April 27, 2022.[1]

---

[1] On appeal, the Tenth Circuit affirmed the district court's grant of summary judgment with respect to the seven unowned videos but reversed with respect to the eighth video, remanding for further consideration of the fair use defense. *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 97 F.4th 699 (10th Cir. 2024). On May 13, 2024, the panel vacated its decision in part and agreed to rehear the fair use issue. *See Whyte Monkee Prods., LLC v. Netflix, Inc.*, 101 F.4th 787 (10th Cir. 2024). The Tenth Circuit has not yet issued its decision following rehearing.

1    Plaintiffs filed this lawsuit against Netflix in California state court in March 2023. The
2 complaint alleges that Netflix's use in *Tiger King* of the eight videos at issue in the Oklahoma
3 litigation also supports claims by them and against Netflix under the copyright laws of Australia,
4 Great Britain, Canada, France, Germany, Italy, Japan, South Korea, New Zealand, and Spain.[2]
5 After Netflix removed this case to federal court and this Court denied plaintiffs' motion to remand,
6 Netflix moved to dismiss, arguing that res judicata/claim preclusion bars all of the claims in this
7 lawsuit. Because plaintiffs have failed to allege any cause of action that could not have been
8 litigated in the Oklahoma proceeding, their lawsuit is precluded by the final Oklahoma district
9 court judgment. Plaintiffs' case is therefore dismissed with prejudice.

**I.    LEGAL STANDARD**

In considering a Rule 12(b)(6) motion contending that a complaint fails to state a claim upon which relief may be granted, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, at 664 (2009).

On a Rule 12(b)(6) motion, materials outside the complaint can be considered if they are incorporated by reference therein or otherwise judicially noticeable. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute" because it is "generally known." This allows courts to "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris*

---

[2] This Order cites to plaintiffs' second amended complaint in the Oklahoma litigation as "Okla. Compl." No. 5:20-cv-00933-D (W.D. Okla.), Dkt. No. 40. This Order cites to the complaint in this litigation as "Cal. Compl." No. 23-cv-03438-PCP (N.D. Cal.), Dkt. No. 1-1. Citations refer to page numbers listed in the docket stamp.

United States District Court
Northern District of California

*v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (internal citation omitted). [3]

A court may properly dismiss a plaintiff's claims under Rule 12(b)(6) if the claims are barred by res judicata. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Claim preclusion prevents "parties from contesting matters that they have had a full and fair opportunity to litigate." *Id.* (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). This "opportunity to litigate" encompasses not only claims that were actually litigated but also those claims that a party could have raised in a prior suit but failed to do so. *See id.*

"Although the Full Faith and Credit Clause does not apply to successive actions in federal courts … the underlying principle of that clause does apply through the doctrine of res judicata." *Harrah's Club v. Van Blitter*, 902 F.2d 774, 777 (9th Cir. 1990). Accordingly, where a party asserts the defense of claim preclusion, courts apply the law of the forum in which the prior court reached final judgment. Because the Western District of Oklahoma reached final judgment on plaintiffs' claims, this Court applies Tenth Circuit caselaw to the question of claim preclusion.

"To apply claim preclusion, three elements must exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1121, 1239 (10th Cir. 2017) (cleaned up). The third element is analyzed under a "transactional test," which asks whether the claim asserted in subsequent litigation arises out of "the same transaction, or series of connected transactions as a previous suit." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (cleaned up). Although courts have articulated different factors that can be considered under this transactional test, the central question is whether the claims in the two suits arise out of one "discrete and unitary factual occurrence." *Id.* Courts will allow a second suit to proceed only where that suit "raises new and independent claims, not part of the previous

---

[3] The Court takes judicial notice of all filings, pleadings, and orders from plaintiffs' prior suit against Netflix in the Western District of Oklahoma, No. No. 5:20-cv-00933-D (W.D. Okla.).

1   transaction." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006).

2   **II.   ANALYSIS**

3         The Court's analysis of the first two requirements for claim preclusion—a final merits judgment and identify of the parties—is straightforward: This litigation involves plaintiffs and a defendant that were all parties to a prior lawsuit that reached final judgment. In both suits, plaintiffs Sepi and Whyte Monkee sued defendant Netflix. The Oklahoma district court rendered final judgment after granting summary judgment for Netflix on all eight claims. 5:20-cv-00933-D (W.D. Okla.), Dkt. No. 58; *see Whyte Monkee*, 601 F. Supp. 3d at 1139. Although that case is still on appeal to the Tenth Circuit, the panel has not issued a mandate disturbing the district court's final judgment, and a federal court's "final judgment retains all of its res judicata consequences pending decision of the appeal." *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433, at 308 (1981)).

      The third requirement's "transactional test" involves a "pragmatic" analysis considering (1) "whether the facts are related in time, space, origin, or motivation," (2) whether the two suits might comprise "a convenient trial unit," and (3) whether treating the suits as a single unit "conforms to the parties' expectations or business understanding or usage." *Yapp*, 186 F.3d at 1227 (cleaned up).

      Here, the Oklahoma lawsuit and this suit are clearly "related in time, space, origin, or motivation." *Id.* The only difference between the two complaints is the location where Netflix is said to have published *Tiger King*. Plaintiffs' two complaints otherwise arise from the same set of "discrete and unitary factual occurrence[s]," *id.*: Mr. Sepi's creation of the videos (Cal. Compl. at 8 ¶ 7; Okla. Compl. at 2-3 ¶¶ 10, 14), Netflix's acquisition of "hard drives" containing those videos (Cal. Compl. at 9 ¶ 12; Okla. Compl. at 4 ¶ 21), Netflix's production of "derivative works" as part of its *Tiger King* documentary series (Cal. Compl. at 9 ¶¶ 12-13; Okla. Compl. at 5 ¶ 28), Netflix's use of the same eight videos (Cal. Compl. at 8 ¶ 9; Okla Compl. at 3 ¶¶ 15, 16), and Netflix's unauthorized "display[] . . . and distribution[]" of those videos (Cal. Compl. at 10 ¶ 14; *see* Okla. Compl. at 5, 28). In the Oklahoma suit, plaintiffs claimed ownership of the works and

alleged that defendants, lacking permission, "copied, prepared derivative works, distributed, marketed, and published Clips of Plaintiffs' Copyrighted works." Okla. Compl. at 5 ¶¶ 26, 25. In this suit, although the complaint never mentions "ownership," its identification of plaintiffs as the "legal authors," coupled with claims of "unauthorized" distribution, necessarily implies a theory of ownership. Cal. Compl. at 7–17 ¶¶ 21, 29, 37, 44, 52, 60, 68, 76, 84, 92, 100. In other words, both suits arise from the same underlying facts and are premised on the same theory that Netflix did not own the videos; that Netflix did not have authorization to publish the videos; and that Netflix nonetheless used its online streaming platform to publish the videos.

Notwithstanding the two cases' shared core of facts, plaintiffs assert that this suit is different from the Oklahoma suit because in this case "the acts which give rise to liability occurred in foreign nations and countries." Cal. Compl. at 9 ¶ 13. As noted above, however, nearly all of the alleged acts giving rise to Netflix's purported liability are common across both suits, and the only differing fact is the location where Netflix published the documentary. That difference, standing alone, does not render the two cases unrelated "in time, space, origin, or motivation." *Yapp*, 186 F.3d at 1227.

The two lawsuits would also form a "convenient trial unit." *Id.* at 1227. Nearly all of the facts between the two suits are identical. The only real factual difference between the two is where the distribution of the videos occurred, a relatively minor issue that would likely be undisputed. The only legal difference between the two suits is what law applies to each form of distribution, but given the factual overlap, the legal issues should be decided in tandem. For example, both suits will turn in part on the issue of ownership. In Oklahoma, the district court dedicated 14 pages of its order to analyzing whether Sepi could claim ownership of any of the videos under the work-for-hire doctrine. *Whyte Monkee*, 601 F. Supp. 3d at 1128-34 (W.D. Okla. 2022). And this Court has already concluded, in denying plaintiffs' motion to remand, that "[u]nder each of the foreign laws at issue, an essential element of a copyright claim is copyright ownership. … [and] the question of ownership as between Mr. Sepi and Whyte Monkee would require application of the Copyright Act's work-for-hire provisions." *Whyte Monkee Productions LLC v. Netflix, Inc.*, ––– F. Supp. 3d –––, 2024 WL 1645455, at *4 (N.D. Cal. Apr. 16, 2024). It would certainly be more

convenient for one court to complete this analysis one time. Further, litigating all claims that arise from the shared factual predicate underlying both lawsuits would also "conform[] to the parties' expectations" of how such litigation should progress. *Yapp*, 186 F.3d at 1227. Plaintiffs' claims rely on a single act of alleged improper publishing, and the parties should certainly expect all claims arising out of that one act to proceed in tandem.

Plaintiffs next invoke the separate accrual doctrine to claim that the prior lawsuit does not preclude this case. That doctrine provides that "[e]ach wrong gives rise to a discrete claim that accrues at the time the wrong occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) (cleaned up). Relying on *Media Rights Techs, Inc. v. Microsoft Corp.*, 922 F.3d 1014 (9th Cir. 2019), plaintiffs argue that a new claim against Netflix arose each time it published *Tiger King* in a new country, and that this case encompasses publications occurring after the filing of their second amended complaint in the Oklahoma litigation.

Plaintiffs' argument fails for multiple reasons. First, plaintiffs do not actually allege that Netflix distributed *Tiger King* in any new countries after the filing of their second amended complaint in the Oklahoma suit. So, even if *Media Rights* were on point, it would not support plaintiffs' preferred outcome.[4] Second, plaintiffs' reliance on *Media Rights* is misplaced because the central copyright issue here involves ownership, not republication. In *Media Rights*, plaintiff Media Rights Technologies ("MRT") sued defendant Microsoft alleging that Microsoft had improperly used MRT's software code in Microsoft products. *Id.* at 1019. The parties dismissed their first patent infringement suit with prejudice pursuant to a settlement agreement. *Id*. MRT then sued Microsoft a second time because, while the first suit was pending, MRT discovered that Microsoft had continued to sell the infringing products. *Id*. at 1019-20. The Court held that MRTs claims in the second suit were not precluded because "the separate-accrual rule means that a new cause of action for copyright infringement accrued each time Microsoft sold an allegedly

---

[4] As early as December 30, 2020, plaintiffs were aware that Netflix distributed *Tiger King* to an international audience. In opposing Netflix's motion to transfer, plaintiffs stated, "[t]he more significant acts of infringement … are the acts of streaming the Documentary containing infringing Copyrighted Clips to viewers across the world." No. 5:20-cv-00933-D (W.D. Okla.), Dkt. No. 25, at 8. Plaintiffs could have asserted this in their second amended complaint, which they filed on December 13, 2021.

6

1  infringing product." *Id*. at 1023. The Court concluded that only sales that occurred prior to the

2  filing of the first case were barred.

3      *Media Rights* was a case about improper copying in which neither party disputed

4  ownership. By contrast, plaintiffs' claims rise or fall on the question of ownership, which accrue

5  only once—namely, at the time "when plain and express repudiation of co-ownership is

6  communicated to the claimant." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733

7  F.3d 1251, 1254 (9th Cir. 2013) (cleaned up); *see also Consumer Health Info. Corp. v. Amylin*

8  *Pharms., Inc.*, 819 F.3d 992, 886 (7th Cir. 2016). The Tenth Circuit endorsed this approach to

9  copyright cases involving ownership claims in *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d

10 1292 (10th Cir. 2014). Stan Lee sued Disney, claiming ownership of various Marvel characters.

11 *Id.* at 1299. Lee's claimed ownership interest "stemm[ed] from a contractual assignment." *Id.* at

12 1300 n.4. The Tenth Circuit held that Lee's cause of action accrued in 2011 when he "expressly

13 repudiated" that contractual agreement. The Court dismissed his claim because "[w]here

14 ownership is the basis of the copyright dispute, [the] 'accrual-upon-express-repudiation' rule

15 prohibits infringement actions when the freestanding ownership action would be time-barred." *Id.*

16 (citations omitted). Thus, under either Ninth or Tenth Circuit caselaw, plaintiffs' foreign copyright

17 claims accrued when Netflix repudiated plaintiffs' ownership interest in seven of the videos at

18 issue. Netflix did this no later than December 2020 when it asserted in its Answer that plaintiffs

19 lacked standing for want of any ownership interest in the videos. Plaintiffs filed their second

20 amended complaint with the Oklahoma district court one year later, after any foreign infringement

21 claim arising from Netflix's alleged non-ownership of the videos had already accrued.

22     Finally, plaintiffs argue that even if the requirements for claim preclusion are generally

23 satisfied, their foreign copyright infringement claims are not precluded because the Oklahoma

24 court lacked jurisdiction over those claims.

25     If a party could not have brought a particular claim in prior litigation, that party will not be

26 precluded from litigating it in a subsequent suit where it can be pursued. *Strickland v. City of*

27 *Albuquerque*, 130 F.3d 1408, 1412 (10th Cir. 1997) ("If … the court in the first action would

28 clearly not have had jurisdiction to entertain the omitted theory … then a second action in a

competent court presenting the omitted theory … [is] not precluded."). Accordingly, if the initial court lacked jurisdiction over a claim pursued in a subsequent suit, a final judgment in the first lawsuit will not have preclusive effect in the second suit.

Plaintiffs suggest that this exception applies here. Plaintiffs do not contest the Oklahoma court's subject matter jurisdiction but contend that the Court lacked personal jurisdiction over Netflix with respect to plaintiffs' foreign copyright infringement claims.

The Oklahoma district court's jurisdiction was co-terminus with that of the Oklahoma state courts. *See* Fed. R. Civ. P. 4(k)(1). Oklahoma's long-arm jurisdictional statute authorizes courts to "exercise jurisdiction on any basis consistent with the … Constitution of the United States." Okla. Stat. Ann., tit. 12 § 2004(F). The Constitution requires a defendant to have "certain minimum contacts with the [forum] state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (cleaned up) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction under the "minimum contacts" test comes in two forms: general or specific. Netflix is neither incorporated nor headquartered in Oklahoma and thus is not "at home" for the purposes of general personal jurisdiction. *Id.* at 924. But the Oklahoma district court likely would have had specific personal jurisdiction over the foreign copyright claims because, as outlined above, the foreign copyright claims arise from the same facts as those alleged in the Oklahoma litigation. Both suits allege a collaboration between Netflix and Royal Goode, in which Royal Goode filmed in and acquired the eight videos from the Garold Wayne Zoological Park in Oklahoma. *See* Cal. Compl. at 7–9 ¶¶1,12; *Whyte Monkee*, 601 F. Supp. 3d at 1125. If the relationship between Netflix and Royal Goode was sufficient to subject Netflix to specific personal jurisdiction in Oklahoma for the domestic copyright claims, it was likely sufficient for the foreign copyright claims as well.

In any event, even if Netflix's contacts with Oklahoma alone were insufficient for the Oklahoma court to exercise jurisdiction over plaintiffs' foreign copyright claims, the court would have had pendent personal jurisdiction over those claims. "[O]nce a district court has personal jurisdiction over a defendant for one claim, it may piggyback onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same

8

facts as the claim over which it has proper personal jurisdiction." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002); *see also Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."). As already noted, the domestic and foreign copyright claims both arise from the same common nucleus of fact: the ownership, creation, and distribution of the *Tiger King* series across the same streaming platform. Thus, even if there were not an independent basis for the Oklahoma federal court to adjudicate plaintiffs' foreign copyright claims, once the district court acquired personal jurisdiction over plaintiffs' domestic copyright claims it had the power to exercise pendent personal jurisdiction over the foreign claims should plaintiffs have chosen to pursue them.

### III.   CONCLUSION

Because plaintiffs assert claims against Netflix in this lawsuit that they could and should have asserted in their prior lawsuit against Netflix, and because that prior lawsuit has reached final judgment, this suit is barred by the doctrine of claim preclusion. The Court GRANTS Netflix's motion and dismisses all claims against Netflix with prejudice.

**IT IS SO ORDERED.**

Dated: November 22, 2024

P. Casey Pitts
United States District Judge