1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   WHYTE MONKEE PRODUCTIONS LLC,          Case No.  23-cv-03438-PCP
    et al.,
8
                    Plaintiffs,            ORDER DENYING MOTIONS FOR
9                                          RECONSIDERATION AND
            v.                             ATTORNEY'S FEES
10
    NETFLIX, INC.,                         Re: Dkt. Nos. 64, 66
11
                    Defendant.
12

13          In this case, plaintiffs Whyte Monkee Productions LLC and Timothy Sepi sued defendant

14   Netflix, Inc. for alleged copyright infringement arising from a series of events surrounding

15   Netflix's production of the documentary series *Tiger King*. The Court dismissed all of plaintiffs'

16   claims with prejudice and issued final judgment on November 22, 2024. Plaintiffs now ask the

17   court to alter and grant relief from that final judgment under Federal Rules 59 and 60. These rules

18   impose high burdens that plaintiffs have come nowhere near satisfying. For that reason, the

19   motion is denied.

20          As the prevailing party in this suit, Netflix separately moves for attorney's fees. For the

21   reasons set forth below, that motion is also denied.

22   I.     BACKGROUND

23          In late 2020, Mr. Sepi and Whyte Monkee filed an action against Netflix in the United

24   States District Court for the Western District of Oklahoma asserting claims of copyright

25   infringement as to eight cinematographic works. Plaintiffs claimed that over the prior ten years

26   they had created a series of videos that Netflix, without authorization, appropriated and used in its

27   reality series *Tiger King*, which it made available on its streaming platform. The claims in that

28   litigation all arose under the federal Copyright Act. In April 2022, the Oklahoma district court

1    granted summary judgment in favor of Netflix, concluding that plaintiffs did not own seven of the

2    eight videos at issue and that the use of the eighth video constituted a fair use. *Whyte Monkee*

3    *Prods., LLC v. Netflix, Inc.*, 601 F. Supp. 3d 1117, 1123 (W.D. Okla. 2022).

4         Nearly a year later in March 2023, plaintiffs filed this action in California state court

5    alleging that Netflix publicly performed, displayed, and distributed unauthorized derivatives of

6    their copyrighted works in Australia, Great Britain, Canada, France, Germany, Italy, Japan, South

7    Korea, New Zealand, and Spain. Plaintiffs asserted copyright claims under the laws of these

8    countries but did not assert any U.S. copyright claims. After Netflix removed the case to federal

9    court, plaintiffs moved to remand. The Court ordered supplemental briefing on the question of

10   "what law foreign courts in the asserted jurisdictions would apply to determine ownership of a

11   copyright in the videos at issue[.]" Dkt. No. 33, at 3. The Court ultimately denied plaintiffs'

12   motion to remand, holding that "application of the Copyright Act's work-for-hire doctrine is … a

13   central federal issue raised by plaintiffs' complaint that is sufficient to establish the Court's federal

14   question jurisdiction." *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 730 F. Supp. 3d 947, 953 (N.D.

15   Cal. 2024); *see also JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124–25 (9th Cir. 2010) (holding that

16   federal question jurisdiction exists if cases require application of the work-for-hire doctrine).

17        In June 2024, Netflix moved to dismiss this case. The Court granted that motion,

18   concluding that the "suit is barred by the doctrine of claim preclusion." *Whyte Monkee Prods. LLC*

19   *v. Netflix, Inc.*, —F. Supp. 3d—, 2024 WL 4876163, at *6 (N.D. Cal. Nov. 22, 2024). The Court

20   concluded that plaintiffs' claims arose from the same set of facts as their claims in the Oklahoma

21   litigation. Contrary to plaintiffs' position, the Court concluded that the separate accrual doctrine

22   did not apply because "plaintiffs [did] not actually allege that Netflix distributed *Tiger King* in any

23   new countries after the filing of their … [Oklahoma] complaint[,]" and because the central issue in

24   the case "involves ownership, not republication." *Id.* at *4. Finally, the Court held that the

25   Oklahoma district court would have had specific personal jurisdiction over plaintiffs' foreign

26   copyright claims or alternatively could have asserted pendent personal jurisdiction over the claims.

27   The Court dismissed plaintiffs' case with prejudice and entered final judgment.

28        In December 2024, plaintiffs timely moved for reconsideration of the Court's order

United States District Court
Northern District of California

2

1    dismissing the case and to alter judgment. Netflix moved for attorney's fees shortly thereafter.

2    **II.    PLAINTIFFS' MOTION FOR RECONSIDERATION**

3         **A.    Legal Standard**

4         Federal Rule of Civil Procedure 59(e) allows a party to move the Court to "alter or amend

5    a judgment no later than 28 days after the entry of judgment." This rule "offers an extraordinary

6    remedy, to be used sparingly in the interests of finality and conservation of judicial resources."

7    *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations

8    omitted). A Rule 59(e) motion "should not be granted, absent highly unusual circumstances[.]" *Id.*

9    Such circumstances include "four basic grounds": (1) "to correct manifest errors of law or fact

10   upon which the judgment rests; (2) … to present newly discovered or previously unavailable

11   evidence; (3) … to prevent manifest injustice; or (4) if the amendment is justified by an

12   intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.

13   2011). The "district court enjoys considerable discretion in granting or denying the motion." *Id.*

14   (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)).

15        Federal Rule of Civil Procedure 60(b)(4) allows the court to "relieve a party from a final

16   judgment" if "the judgment is void[.]" The rule "applies only in the rare instance where a

17   judgment is premised either on a certain type of jurisdictional error or on a violation of due

18   process that deprives a party of notice or the opportunity to be heard." *U.S. Aid Funds, Inc. v.*

19   *Espinosa*, 559 U.S. 260, 271 (2010). "[T]he scope of what constitutes a 'void' judgment is

20   narrowly circumscribed[.]" *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 466 (9th Cir. 2023).

21   Where a party attacks the Court's jurisdiction over the case, a judgment is void only "where the

22   [Court's] assertion of jurisdiction is truly unsupported" or "lack[s] even a colorable basis."

23   *Hoffman v. Pulido*, 928 F.3d 1147, 1151 (9th Cir. 2019); *see U.S. Aid Funds*, 599 U.S. at 271

24   ("[A] judgment is void because of a jurisdictional defect [only in the] exceptional case in which

25   the court that rendered judgment lacked even an 'arguable basis' for jurisdiction.").

26        **B.    Analysis**

27        Plaintiffs raise five arguments in support of their motion. The Rule 59(e) motion argues:

28   (1) that the Court mistreated the issue of ownership as to the eighth video; (2) that the Court

1  violated the principle of party presentation; (3) that the Court erred in denying plaintiffs' leave to

2  amend; and (4) that the Court misapplied the concept of pendent personal jurisdiction. The Rule

3  60 motion argues: (5) that the Court lacked subject matter jurisdiction and improperly denied

4  Netflix's motion to remand.[1] Plaintiffs have not demonstrated a basis for relief.

5          **1.      Plaintiffs have failed to demonstrate the clear error necessary for relief**
                     **under Rule 59(e).**
6

7          Plaintiffs claim the Court made four errors of law in dismissing this case. These arguments

8  fail for many reasons, but most notably they fail to demonstrate the clear legal error necessary to

9  warrant Rule 59(e)'s "extraordinary remedy." *Kona Enterprises*, 229 F.3d at 890.

10         Plaintiffs first argue that when applying the separate accrual doctrine, the Court erred in

11 failing to distinguish the eighth video. *See Whyte Monkee Prods.*, 2024 WL 4876163, at *4.

12 Although the parties did not seriously dispute ownership of the eighth video, it was not clear error

13 for the Court to dismiss claims related to all eight videos notwithstanding the separate accrual

14 doctrine's application to only seven of the videos. *See id.* ("Thus, under either Ninth or Tenth

15 Circuit caselaw, plaintiffs' foreign copyright claims accrued when Netflix repudiated plaintiffs'

16 ownership interest in seven of the videos at issue."). Plaintiffs' central error (across their motion)

17 is that they take the Court's prior order out of context. The Court analyzed the separate accrual

18 doctrine only *after* having concluded a lengthy discussion of claim preclusion. The Court held that

19 "nearly all of the alleged acts giving rise to Netflix's purported liability are common across both

20 suits." *Id.* at *3. Indeed, that is the crux of claim preclusion: A subsequent suit alleging new legal

21 claims related to facts already considered by a different court are barred by res judicata. *See Lenox*

22 *MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F,3d 1221, 1239 (10th Cir. 2017); *Yapp v. Excel*

23 *Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999). That aspect of the Court's holding applied to all

24 eight videos, and plaintiffs do not seriously quarrel with the Court's conclusion that their claims

25 relate to the same set of facts from which the Oklahoma suit arose.

26

27 ───────────────
[1] Plaintiffs were not explicit in their briefing as to which argument falls under which Federal Rule.
The Court has nonetheless done its best to decipher plaintiffs' arguments. If the Court
28 misinterpreted plaintiffs' brief and treated an argument under the incorrect rule, that would not
change the outcome of the motion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Further, the language of the Court's order does not clearly embrace the idea that the

2  separate accrual doctrine even applies. The Court addressed the Ninth Circuit's decision in *Media*

3  *Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014 (9th Cir. 2019), at plaintiffs' behest. The

4  Court expressed skepticism that this case applied because "plaintiffs [did] not actually allege that

5  Netflix distributed *Tiger King* in any new countries after the filing of their second amended

6  complaint in the Oklahoma suit." *Whyte Monkee Prods.*, 2024 WL 4876163, at *4. To properly

7  invoke the separate accrual doctrine, plaintiffs needed to allege repeat violations of their

8  copyright, such as distribution of *Tiger King* in new countries after the filing of the second

9  amended Oklahoma complaint. Plaintiffs never made that argument in their complaint, in their

10  response to Netflix's motion to dismiss, or in their hearing before the Court, despite being aware

11  since at least December 2020 that Netflix had distributed *Tiger King* to an international audience.

12  Plaintiffs continuously fail to demonstrate how differential treatment of the eighth video would

13  have changed the outcome of their claims. Their position here does not demonstrate clear legal

14  error on the Court's part.

15  Plaintiffs next argue that the Court violated the principle of party presentation.

16  Specifically, plaintiffs argue that it was error for the Court to raise ownership in its order

17  dismissing the case because "[d]efendant has not ***raised*** any ownership ***issue*** here ***in this case***."

18  Dkt. No. 64, at 10 (emphasis in original). This argument is patently frivolous and borders on bad

19  faith. Plaintiffs both mischaracterize the Court's order and entirely gloss over the history of this

20  case.

21  As an initial matter, although plaintiffs are correct that ownership factored into the Court's

22  decision to dismiss the case, they are incorrect that the Court "act[ed] as though ownership has

23  already been adjudicated ***in this case***[.]" Dkt. No. 64, at 11 (emphasis in original). Defendants

24  moved to dismiss this case as barred by res judicata. That principle that stands for the simple idea

25  that one court—not two—should decide all legal questions that arise from the same set of facts.

26  Far from ruling on the merits of ownership, the Court merely compared aspects of plaintiffs'

27  Oklahoma and California complaints to reason that the "central copyright issue [in this case]

28  involves ownership, not republication." *Whyte Monkee Prods.*, 2024 WL 4876163, at *5.

United States District Court
Northern District of California

1    Ownership was also a central legal question in the Oklahoma litigation, and the presence of two

2    identical legal questions arising from the same factual contentions revealed the impropriety of

3    plaintiffs' international copyright claims here. Plaintiffs' argument misconstrues the Court's

4    identification of a legal question as a decision on that question's merits. It was the presence of an

5    ownership question, not its merit, that led the Court to conclude that "plaintiffs assert claims

6    against Netflix … that they could and should have asserted in their prior lawsuit against Netflix."

7    *Id.* at *6.

8         Further, the principle of party presentation is not implicated here. That principle states that

9    "in both civil and criminal cases … we rely on the parties to frame the issues for decision and

10   assign to courts the role of neutral arbiter of matters the parties present." *United States v.

11   Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citing *Greenlaw v. United States*, 554 U.S. 237, 243

12   (2008)). But "a court is not hidebound by the precise arguments of counsel," particularly where an

13   issue arose throughout the litigation. *Id.* at 380. In this case, the Court ordered supplemental

14   briefing regarding "what law foreign courts in the asserted jurisdictions would apply to determine

15   ownership of a copyright in the videos at issue[.]" Dkt. No. 33, at 3; *see Sineneng-Smith*, 590 U.S.

16   at 376 ("There are no doubt circumstances in which a modest initiating role for a court is

17   appropriate") (collecting cases in which the Supreme Court ordered supplemental briefing).

18   Ownership was intertwined with plaintiffs' foreign copyright claims and with the Court's subject-

19   matter jurisdiction. Given the Court's independent obligation to consider its subject-matter

20   jurisdiction, it was certainly appropriate for the Court to raise the ownership question *sua sponte*.

21   Far from going outside of its discretionary bounds, this Court put that question to the parties

22   before it and asked them to brief the question. *Cf. Sineneng-Smith*, 590 U.S. at 374 (holding that

23   the circuit court violated the party presentation principle when it appointed "three [third-party]

24   *amici* and invited them to brief and argue issues framed by the panel[.]").

25         Perhaps most problematic about Plaintiffs' argument is that they ignore the frequency with

26   which ownership came up throughout this litigation, almost as if this motion were their first

27   encounter with the case. For example, the word "ownership" appears over thirty times in

28   plaintiffs' supplemental brief in support of its remand motion. *See* Dkt. No. 30. Netflix's motion to

United States District Court
Northern District of California

1  dismiss explicitly states that "[t]he Complaint also undoubtedly alleges … the same set of facts as

2  the Oklahoma complaints as to the authorship and ownership of the Videos." Dkt. No 44, at 19.

3  And Netflix's reply brief spends two pages discussing ownership in the context of the separate

4  accrual doctrine. *See* Dkt. No. 54, at 13–14. Indeed, it is astounding how plaintiffs can seriously

5  argue that "no party directly raised [ownership] in a motion/brief" when, not four pages later, they

6  also state that in their own motion to remand, "*[p]laintiffs* argued it was foreign law that would

7  govern ownership over foreign property. Defendant argued it was U.S. law that would govern

8  ownership." These are just a handful of the countless instances in which ownership arose in this

9  case. *See* Dkt. No. 68, at 16 (collecting citations). Dkt. No. 64, at 11, 14 (emphasis). Plaintiffs'

10 argument lacks any basis in fact or law and thus fails to meet Rule 59(e)'s clear error threshold.

11      Plaintiffs next argue that the Court erred in dismissing without leave to amend. Leave to

12 amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts may deny

13 leave to amend in circumstances involving, "undue delay, bad faith … undue prejudice to the

14 opposing party … [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see*

15 *Griggs v. PaceAm, Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Courts routinely decline leave to

16 amend when dismissing a suit as barred by res judicata because amendment would be futile. *See,*

17 *e.g.*, *Aquino v. Cal. Reconveyance Co.*, No. 14-cv-01818-WHO, 2014 WL 5494446, at *5 (N.D.

18 Cal. Oct. 30, 2014) ("Amendment here would be futile because all five of Aquino's causes of

19 action are barred by res judicata."); *Geraldo v. Richland Holdings, Inc.*, No. 17-cv-15-JCM, 2017

20 WL 3174918, at *5 (D. Nev. July 26, 2017), *aff'd*, 716 F. App'x 728 (9th Cir. 2019) ("Leave to

21 amend is futile because plaintiffs' claims are precluded"); *Geraldo*, 716 F. App'x at 729 (holding

22 that "the district court did not abuse its discretion by denying leave to file an amended complaint

23 because amendment would be futile.").

24      The Court's decision to dismiss with prejudice does not meet Rule 59(e)'s clear error

25 standard given that plaintiffs failed to allege any facts that might have saved their complaint

26 despite knowing since as early as December 2020 that Netflix had distributed *Tiger King* abroad.

27 *See Music v. Bank of Am., N.A.*, 717 Fed. Appx. 658, 661 (9th Cir. 2017) ("We have held that

28 where the appellant fails to point to any facts that could save the complaint, the district court does

not abuse its discretion by dismissing with prejudice.") (citing *Halkin v. VeriFone, Inc.*, 11 F.3d 865, 872 (9th Cir. 1993)).

Finally, Plaintiffs argue that the Court erred in its application of pendent personal jurisdiction. This argument is flawed for three reasons. First, plaintiffs latch onto the specific facts of *United States v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002), to claim that the Court cited that case in error. In *Botefuhr*, the lower court dismissed the jurisdictional anchor claim before trial but "retain[ed] jurisdiction" over a second claim for which it did not have an independent jurisdictional basis. *Id.* at 1274. The Tenth Circuit held that this was an abuse of discretion. But this aspect of *Botefuhr* is inapposite because the question in this case was not whether the Oklahoma court could have retained jurisdiction after it dismissed plaintiffs' domestic copyright claims. Rather, the question was whether the Oklahoma court could have asserted pendent personal jurisdiction over the foreign copyright claims *in the first instance*. Plaintiffs confuse the temporal nature of this analysis by asserting that the Oklahoma court's *subsequent* dismissal of the domestic copyright claims rendered any *initial* assertion of pendent personal jurisdiction improper. *But see id.* at 1272 ("[O]nce a district court has personal jurisdiction over a defendant for one claim, it may piggyback onto that claim other claims over which it lacks independent personal jurisdiction[.]"). Indeed, as this Court concluded, "the domestic and foreign copyright claims both arise from the same common nucleus of fact … [so,] once the district court *acquired* personal jurisdiction over plaintiffs' domestic copyright claims it had the power to exercise personal pendant jurisdiction" over the foreign claims. Dkt. No. 51, at 58 (emphasis added). At that time, the Oklahoma court could have made merits decisions about all claims in tandem.

Second, plaintiffs misapply the Supreme Court's holding in *Bristol-Meyers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255 (2017). In that case, a set of 600 plaintiffs sued Bristol Meyers in California state court. Most of the plaintiffs resided outside of California and had not alleged any facts that tied their injury to the forum in which they sued. The only connection between the out-of-state plaintiffs and California were the claims of the California plaintiffs, who were different parties altogether. The Court concluded that the California courts lacked personal jurisdiction because there must be an "adequate link between the State and the nonresidents'

United States District Court
Northern District of California

1    claims." *Id.* at 264. *Bristol-Meyers*, however, was a case about specific personal jurisdiction, not

2    the distinct concept of pendent personal jurisdiction. In *Bristol-Meyers*, non-resident plaintiffs

3    attempted to piggyback their own claims onto the claims of different parties without alleging any

4    relation between their specific injury and California. Pendent personal jurisdiction addresses a

5    different situation altogether, in which a court already has jurisdiction over a claim between a

6    plaintiff and a defendant and *the same plaintiff* seeks to "piggyback" additional claims against *the*

7    *same defendant* that arise from the same set of facts as the underlying claim. Unlike the claims of

8    the non-resident plaintiffs who attempted to piggyback their claims onto the claims of the

9    California residents in *Bristol-Meyers*, plaintiffs' domestic and foreign copyright claims all arose

10   from the same common nucleus of facts.

11          Third, even if plaintiffs are correct that the Court erred in its application of pendent

12   personal jurisdiction, that would not change the outcome. Plaintiffs once again gloss over the

13   context of the Court's holding. The paragraph preceding the Court's discussion of pendent

14   personal jurisdiction stated that "the Oklahoma district court likely would have had specific

15   personal jurisdiction over the foreign copyright claims[.]" *Whyte Monkee Prods.*, 2024 WL

16   4876163, at *5. The Court then qualified its discussion of pendent personal jurisdiction by stating

17   that "even if Netflix's contacts with Oklahoma alone were insufficient for the Oklahoma court to

18   exercise" personal jurisdiction, that court could have exercised pendent personal jurisdiction. *Id.*

19   The Court's opinion, read in context, makes clear that the Oklahoma district court likely would

20   have had an independent basis for exercising specific personal jurisdiction over plaintiffs' foreign

21   copyright claims given that both the domestic and foreign copyright claims arose from events

22   surrounding the production of *Tiger King* in Oklahoma.

23          **2.      Plaintiffs fail to demonstrate that the Court lacked even a colorable**
                     **basis for jurisdiction.**
24

25          Plaintiffs argue under Rule 60 that the Court "made manifest error contrary to"

26   *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988). Plaintiffs' argument is

27   quite muddled, but the Court's best reading is that plaintiffs believe the Court violated the well-

28   pleaded complaint rule by exercising subject matter jurisdiction over the case. *See id.* ("Thus, a

United States District Court
Northern District of California

1    claim supported by alternative theories in the complaint may not form the basis for § 1338(a)

2    jurisdiction unless patent law is essential to each of those theories.").[2] Their argument seems to be

3    that the Court violated this rule because plaintiffs' complaint asserted foreign claims, whereas

4    Netflix argued (and this Court concluded) that plaintiffs' claims necessarily contained an

5    embedded federal question sufficient to give rise to federal jurisdiction. Once again, plaintiffs

6    confuse the issue. The well-pleaded complaint precludes a court from basing its jurisdiction on a

7    defendant's defenses to a complaint, but the federal question here arose from plaintiffs' claims, at

8    least some of which require application of the federal Copyright Act's work-for-hire doctrine

9    because the relevant foreign jurisdiction determines copyright ownership by applying the law of

10   the place of creation. As the Court noted in its order denying plaintiffs' motion to remand, binding

11   Ninth Circuit precedent holds that federal question jurisdiction exists where a plaintiffs' complaint

12   requires application of the Copyright Act in this manner. *See JustMed*, 600 F.3d at 1124. Plaintiffs

13   offer no support for their contention that a state court must first decide whether federal law applies

14   before a federal court can assert jurisdiction over a removed case, and the Court is aware of no

15   caselaw supporting that position. *But see Jones v. Giles*, 741 F.2d 245, 248 (9th Cir. 1984)

16   ("Federal courts have jurisdiction to determine jurisdiction[.]").

17        Accordingly, plaintiffs have not demonstrated that the Court lacked "even a colorable

18   basis" for jurisdiction as required by Rule 60. *Hoffman*, 928 F.3d at 1151.

19   **III.     NETFLIX'S MOTION FOR ATTORNEY'S FEES.**

20        As the prevailing party in this suit, Netflix moves for attorney's fees under 17 U.S.C. §

21   505. The Court does not believe that the copyright statue provides a basis for such an award

22   because this case did not turn on the existence of a valid domestic copyright, but even if the statute

23   did provide such a basis, the Court would exercise its discretion to decline to award fees here.

24

25

26   [2] Properly stated, the well-pleaded complaint rule requires a federal court to base its jurisdiction upon the complaint, not defenses raised in response to a complaint. *See Franchise Tax Board of*

27   *Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1982) (Federal-question jurisdiction extends to "only those cases in which a well-pleaded complaint establishes either that

28   federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law.")

United States District Court
Northern District of California

### A.    Legal Standard

The Copyright Act's fee shifting provision allows an award of fees "[i]n any civil action under" the Copyright Act. 17 U.S.C. § 505. This provision gives district courts "broad leeway" to award attorney's fees. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). "[A]ny action that turns on the existence of a valid copyright and whether that copyright has been infringed sufficiently invokes the Copyright Act as to allow for the discretionary award of attorney's fees." *Doc's Dreams, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020). Several "nonexclusive factors" inform a Court's award of attorney's fees: "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 579 U.S. at 202 (citations omitted and cleaned up). A district court must give "substantial weight to the [objective] reasonableness [or unreasonableness] of [the losing party's] litigating position[.]" *Id.* at 209.

### B.    17 U.S.C. § 505 does not allow for an award of fees in this case.

As noted already, 17 U.S.C. § 505 provides a basis for awarding fees in any action that "turns on the existence of a valid copyright" and thus "sufficiently invokes the Copyright Act." *Doc's Dreams*, 959 F.3d at 363. This case, however, did not depend upon the existence of a valid federal copyright or otherwise "invoke" the Copyright Act. It was instead brought under the laws of various foreign countries.

To be certain, in declining to remand the case to state court the Court concluded that questions of domestic copyright ownership, as determined by the work-for-hire doctrine, were embedded within plaintiffs' foreign copyright claims. But a complaint that merely requires interpretation of the Copyright Act is different from one pursued under that Act. Although the Court would have eventually applied the work-for-hire doctrine to determine plaintiffs' ownership over the videos at issue, foreign copyright law provided the basis for the copyrights purportedly infringed in this case.

The precedents upon which Netflix relies in arguing to the contrary all involved rights provided by the federal Copyright Act. In *Doc's Dreams*, for example, the district court concluded that § 505 did not apply because the plaintiffs' claims arose under the Declaratory Judgment Act

1  rather than the Copyright Act. The Ninth Circuit reversed, holding that an action proceeds under

2  the Copyright Act when it "turns on the existence of a valid copyright and whether that copyright

3  has been infringed[.]" *Doc's Dreams*, 959 F.3d at 363. The Ninth Circuit cited favorably an

4  example of a claim for which fees are appropriate:

> [I]magine that *C* sues *D* for a declaration regarding copyright—for instance, that *D* performed her services on a for-hire basis, meaning that she has no interest in the copyright. In reply, *D* counterclaims for a declaration that she worked outside of employment, and accordingly owns the copyright in the subject work, either outright or as an equal co-owner with *C*. In that instance, jurisdiction in federal court arises under the Declaratory Relief Act as well as being premised on the need to construe the provisions of the Copyright Act. So, the Copyright Act allows courts, in their discretion, to grant attorney's fees to the prevailing party under those circumstances.

11  *Id.* at 361 (citing Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10[B][1][b]).

12      Netflix claims that this example is sufficiently analogous to plaintiffs' claims to warrant an

13  award of fees. But in both the district court decision on appeal in *Doc's Dreams* and the example

14  provided by the circuit court, the copyrights at issue would not have existed but for the Copyright

15  Act.[3] In that sense, the entire case was "a civil action under" the Copyright Act. 17 U.S.C. § 505.

16  By contrast, Sepi and Whyte Monkee's claims exist by virtue of foreign copyright law. Although

17  some of those claims require interpreting and applying the Copyright Act, their claims did not

18  depend upon the Court finding a "valid [federal] copyright" under the Copyright Act or a finding

19  that such a federal "copyright has been infringed." *Doc's Dreams*, 959 F.3d at 363.

20      Because plaintiffs' claims did not involve a "civil action under" the Copyright Act, 17

21  U.S.C. § 505 does not allow the Court to award fees.

22      **C.    The Court would decline to award attorney's fees even if it could do so.**

23      Even if 17 U.S.C. § 505 applied, the Court would nevertheless decline to award fees. The

24  Court's decision is guided by the "nonexclusive" *Kirtsaeng* factors: "frivolousness, motivation,

25  objective unreasonableness, and the need in particular circumstances to advance considerations of

26

27  _____

28  [3] Indeed, because the Copyright Act preempts state copyright law, *see* 17 U.S.C. § 301(a), most discussions of "copyright" in American legal decisions after January 1, 1978 necessarily refer to rights created by the federal Act.

compensation and deterrence." *Kirtsaeng*, 579 U.S. at 202 (citations omitted and cleaned up).

Plaintiffs' position in this case was not objectively unreasonable or frivolous. Although the Court concluded that the Oklahoma litigation precluded plaintiffs' claims, the complaint raised novel questions about the application of foreign copyright law. In light of plaintiffs' arguments about the separate accrual doctrine, it was not unreasonable to believe that those claims remained viable notwithstanding the prior final judgment. Plaintiffs failed to plead any facts that might allow their separate accrual theory to prevail, but it was not objectively unreasonable for them to believe republication abroad might give rise to new claims in a subsequent suit. This gave the claims at least an "arguable basis … in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). And the intersection of foreign copyright claims, domestic copyright principles, and foreign publication of allegedly infringing content "presented … complex or novel questions of copyright law." *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996). Nor is there any clear indication of improper motive on plaintiffs' part. The simple fact that plaintiffs' chose to file their case in California state court does not itself give rise to improper motive, particularly given that court's personal jurisdiction over Netflix.

Although claims precluded by res judicata are the sorts of claims that may warrant deterrent measures, the complex questions involved in this case do not so squarely put plaintiffs' claims into that camp. And even if fees were warranted to deter a future suit, a fees award in this case would go much further than necessary. Netflix seeks $254,942.98 in fees, while plaintiffs have submitted documentation demonstrating that Mr. Sepi is of limited means. His monthly income is limited as are the assets at his disposal. An award for Netflix, even in a sum significantly smaller than requested, could be financially ruinous to Mr. Sepi, transforming deterrence into punishment.

For all of these reasons, the Court would therefore decline to award attorney's fees in this matter even if the Copyright Act provided a basis for doing so.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' motion for reconsideration and denies Netflix's motion for attorney's fees.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: April 1, 2025

_____

P. Casey Pitts
United States District Judge